645 So.2d 604 (1994)
William A. BILLIOT
v.
B.P. OIL COMPANY and Janie Wingard.
No. 93-C-1118.
Supreme Court of Louisiana.
September 29, 1994.
Dissenting Opinion December 16, 1994.
Opinion Modifying Opinion on Denial of Rehearing December 16, 1994.[*]
*605 Michael L. Mullin, New Orleans, for applicant.
Milton O'Neal Walsh, Edgar Litchfield, Berrigan, Danielson, Litchfield, Olsen, Schonekas & Mann, Mark D. Latham, Sherman G. Fendler, Carol L. Welborn, Liskow & Lewis, James F. Holmes, Christovich & Kearney, New Orleans, for respondents.
Russ M. Herman, James C. Klick, Tilden D. Pick, New Orleans, for Herman, Herman, et al.
Jack M. Bailey, Jr., Shreveport, for Law Offices of Jack M. Bailey and William A. Billiot, amicus curiae.
James E. Bolin, Jr., Shreveport, for Sockrider, Bolin & Anglin, amicus curiae.
John J. Cummings, III, New Orleans, for Cummings, Cummings, et al., amici curiae.
Paul H. Due, Baton Rouge, for Due, Smith, et al., amici curiae.
Calvin C. Fayard, Jr., Denham Springs, for Fayard, Harris & Roethele, amicus curiae.
Clarence W. Gerhardt, Shreveport, for Gerhardt & Associates, amicus curiae.
Philip G. Hunter, Alexandria, for Fuhrer, Flournoy, et al., amici curiae.
J.B. Jones, Jr., Cameron, for Jones, Jones, & Alexander, amicus curiae.
J.J. McKernan, Baton Rouge, for Friedman, McKernan & Gold, amicus curiae.
Stephen B. Murray, New Orleans, for Murray Law Firm, amicus curiae.
Robert W. Thomas, Lake Charles, for Thomas & Hardy, amicus curiae.
Michael X. St. Martin, Houma, for St. Martin, Lirette, et al., amicus curiae.
*606 William B. Baggett, Lake Charles, for Baggett, McCall & Burgess, amicus curiae.
Bob F. Wright, James P. Roy, Lafayette, for Domengeaux, Wright, et al., amicus curiae.
Russ M. Herman, James C. Klick, New Orleans, for William A. Billiot, amicus curiae.
James J. Coleman, Peggy Wallace, Richard B. Jurisich, Jr., Marshall T. Darden, John A. Dunlap, New Orleans, for Chamber of Commerce, New Orleans & River Region, Liquid Terminals Ass'n, DynMcDermott Petroleum Operation Co., Louisiana Chemical Ass'n, amici curiae.
Dissenting Opinion by Justice Hall December 16, 1994.
DENNIS, Justice.[*]
In this case we are called upon to decide (1) whether a worker is barred from obtaining an award of exemplary or punitive damages [1] from his or her employer under Civil Code Article 2315.3 in connection with injuries caused by the employer's wanton or reckless disregard for the public safety in the storage, handling or transportation of hazardous or toxic substances, either by virtue of the remedy exclusion rule of the workers' compensation act or by operation of Article 2315.3 itself; and (2) whether Article 2315.3 implicitly limits exemplary or punitive damages awards to situations in which the plaintiff's injuries were caused by the toxic or hazardous nature of the substances involved. We conclude that neither the remedy exclusion rule of the workers' compensation act nor Article 2315.3 itself bars a worker's action against his or her employer for punitive or exemplary damages and that Article 2315.3 allows a plaintiff to recover punitive or exemplary damages for any injury caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances.
The remedy exclusion rule of the workers' compensation act does not operate to bar an employee's right under Civil Code Article 2315.3 to an exemplary or punitive damage award against his employer. The purpose of punitive awards is to punish and deter wrongdoers, whereas the primary purpose of ordinary damages is to compensate the victim. In punitive awards, accordingly, the emphasis is not on the plaintiff and his hurt but on the defendant and his conduct. Therefore, the right to a punitive award is a different kind of right or legally enforceable claim than the right to compensatory damages. In Louisiana, a punitive award was not authorized in connection with personal injury until the enactment of Civil Code Article 2315.3 by Act 335 of 1984. Consequently, the 1914 workers' compensation act's "remedy exclusion rule," providing that compensation benefits shall be exclusive of all other employee rights and remedies against the employer due to work-related injury, barred only the right to compensatory damages available to employees. Because subsequent amendments to the workers' compensation act have not changed the language of the remedy exclusion rule or its substantive effect, the rule bars an employee's right to compensatory damages but not his or her right to a punitive award.
Civil Code Article 2315.3 grants a right to seek an exemplary or punitive damage award to any person injured by a defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances. Article 2315.3 does not expressly exclude employees from the grant of this right and cannot be interpreted to do so implicitly because the law is clear and unambiguous and does not lead to absurd consequences. Moreover, the express meaning of Article 2315.3 best conforms to the purpose, context and legislative history of the law. By the same token, Article 2315.3 cannot be interpreted to exclude implicitly any plaintiff from the grant of the right to seek punitive awards because of the particular manner in which the defendant's proscribed wanton or reckless conduct caused the plaintiff's injury. That interpretation *607 would be contrary to the law as written and the meaning that best conforms to its purpose.

I.
This is a review of the grant of a summary judgment. The general standard to be applied in reviewing the grant or denial of a summary judgment motion is the same as that which the trial court is required to employ initially. Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La.1993); see also Wright, Miller & Kane, Federal Practice and Procedure § 2716, at 643-44 (1983). On summary judgment, the inferences to be drawn from the underlying facts contained in the summary judgment evidence and materials must be viewed in the light most favorable to the party opposing the motion. Schroeder v. Board of Supervisors, 591 So.2d 342, 345 (La.1991); see also United States v. Diebold, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam). Applying these principles, the factual context of the case presented for review is as follows.
William Billiot was employed by Brown & Root as a maintenance employee and was acting as a statutory employee of the BP Oil Company at the BP refinery when he was injured while changing the filters in a filter vessel owned by BP. A defective gauge on the vessel failed to warn Billiot that it was unsafe to change the filter because the contents of the vessel were under pressure. As a result, Billiot suffered third degree burns over forty percent of his body, resulting in permanent disability and disfigurement, when the pressurized vessel sprayed him with hot methyldiethanolamine, a hazardous or toxic substance. Although Billiot's injuries were caused by his contact with the heated substance, there was no evidence that his injuries were caused or aggravated by the inherent toxic or hazardous nature of the substance. Because BP knowingly failed to replace the defective gauge, BP was guilty of wanton and reckless disregard for public safety in the storage, handling, or transportation of a hazardous or toxic substance.
Billiot brought suit against BP and one of its employees, Janie Wingard (collectively referred to herein as "BP"), seeking inter alia exemplary damages under Article 2315.3. BP successfully moved the trial court for a summary judgment rejecting Billiot's claim for punitive damages and other claims not part of the case before us. The trial court concluded that Billiot could not recover punitive damages from BP under Article 2315.3 because (1) employees of hazardous or toxic substance handlers are excluded from the class of plaintiffs who may recover punitive damages from the handlers under Article 2315.3, and Billiot was a statutory employee of BP at the time of the accident, and (2) a plaintiff may recover exemplary damages under Article 2315.3 only for injuries caused by the toxicity or intrinsic hazardous nature of the substance, and Billiot was not so injured but was severely burned by the heat of the substance.
In affirming the summary judgment, the court of appeal, as the trial court, assumed that the remedy exclusion rule of the workers' compensation statute applied so as to bar the remedy at issue in the present case, and concluded that Billiot could not recover punitive damages in tort from BP because his claim did not fall within either exception to the remedy exclusion rule, i.e., Billiot's punitive damage claim was neither a valid claim based on an intentional act nor a claim for a fine or penalty under a statute. The court of appeal did not reach the alternative ground for the trial court's decisionthat a victim must show that his or her injuries were caused by the toxicity or intrinsic hazardous nature of the substance. Billiot v. BP Oil Co., 617 So.2d 28 (La.App.4th Cir.1993). We granted certiorari to determine (1) whether the remedy exclusion rule of the workers' compensation act or the provisions of Article 2315.3 excludes an employee's right or remedy to obtain punitive damages from his employer under Article 2315.3 for injuries caused the employee by the employer's wanton or reckless disregard for public safety in the handling of hazardous or toxic substances and (2) whether punitive damages under Article 2315.3 are available only when the injuries sustained were caused by the inherent nature of the toxic or hazardous substance. Billiot v. BP Oil Company, 619 So.2d 558 (La.1993).

*608 II.

A.
The threshold question is whether the remedy exclusion rule applies to this case at all; the issue is not merely whether the case falls within one of the statutory exceptions to the remedy exclusion rule, as the trial and appeals courts assumed. We conclude that the remedy exclusion rule does not apply in the present case because the rule excludes only the employee's right to compensatory damages that was provided by law at the time of the enactment of the workers' compensation act. The remedy exclusion rule does not abrogate a right to a punitive award because the law of this state did not provide for such a right when the legislature enacted the rule; therefore it cannot be argued that the legislature implicitly intended to continue such an abrogation when it enacted the hazardous or toxic substance punitive damage action in 1984. Further, under established principles of constitutional law, the legislature by its enactment of the workers' compensation act's remedy exclusion rule could not prevent itself from creating a future punitive damage remedy for employees against employers. Finally, the legislature has not altered the original wording or the substantive effect of the remedy exclusion rule since its first enactment. Consequently, that rule operates to bar only the employee's right to compensatory damages and not the employee's right to a punitive award.
Because the trial and appeals courts did not give any explanation for their assumption that the remedy exclusion rule applies to the punitive damage remedy at issue in the present case, we can only speculate as to their reasoning.
First, if the trial and appeals courts assumed that the Louisiana Workers' Compensation Act's remedy exclusion rule barred a right to punitive damages provided by law, and that Article 2315.3 implicitly continues that bar, their conclusion was in error. As originally enacted, the remedy exclusion rule provided that "the rights and remedies herein granted to an employee on account of a personal injury for which he is entitled to compensation under this act shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependants, relations, or otherwise, on account of such injury." Act 20 of 1914, § 34. The purpose of this provision was to substitute for employees' existing rights and remedies relative to compensation for personal injuries the new rights and remedies, provided under the compensation act, to benefits payable according to a definitely limited statutory schedule. See Malone & Johnson, Workers' Compensation §§ 32, 361 (1980). In other words, the workers' compensation act substituted its schedule of benefits for the substantive "right" (i.e. a legally enforceable claim of one person against another, see Black's Law Dictionary, at 1324 (1990); Restatement of Property § 1) that an employee acquired by law against the employer due to a work-related personal injury and its accompanying "remedies" (i.e. the means by which such rights could be enforced, redressed, or compensated, see Long Leaf Lumber, Inc. v. Svolos, 258 So.2d 121, 124 (La.App. 2 Cir. 1972); Dobbs, Remedies § 1.2 (1973); Black's Law Dictionary, supra, at 1294). Consequently, the remedy exclusion rule replaced or excluded only the substantive legal rights of employees to compensatory damages arising from work-related personal injuries and the remedies or means provided by law for enforcing these rights.
At the time of the enactment of the workers' compensation law in 1914, no personal injury of any kind gave rise to a substantive legal right to punitive or exemplary damages or a remedy or means for carrying it into effect. The sources of law in Louisiana are legislation and custom; and, as in all codified systems, legislation is the superior source. La.Civ.Code art. 1 (1988); La.Civ.Code art. 1 & 3 (1870). See also La.Civ.Code art. 1, Revision Comments-1987. In a series of decisions beginning as early as 1881, see, Dirmeyer v. O'Hern, 39 La.Ann. 961, 3 So. 132, 134 (1887) (vacated on other grounds), Deslonde v. O'Hern, 39 La.Ann. 14, 1 So. 286 (1887), M.L. Byrne & Co. v. L.H. Gardner & Co., 33 La.Ann. 6 (1881), and culminating with Vincent v. Morgan's Louisiana & T.R. & S.S. Co., 140 La. 1027, 74 So. 541 (1917), this court, interpreting the applicable civil code provisions, made clear that the law of *609 Louisiana did not provide or authorize a right or remedy for the recovery of punitive damages.
The Vincent case contains an especially authoritative and exhaustive explanation of the basic principles of the Louisiana law of damages. In that case, the plaintiffs, parents of a young boy who had been killed by the negligent discharge of a pistol by a railroad security guard, sought punitive damages in addition to the compensatory damages that had been awarded. After conducting a thorough review of the prior jurisprudence and an in-depth analysis of the applicable codal provisions, namely Articles 2315 and 1934 of the Louisiana Civil Code of 1870, this court concluded that punitive damages were not available under Louisiana law. Initially, the court defined punitive damages as an award to a victim, in addition to his compensatory damages, for the purpose of punishing the offender and discouraging other transgressions for the benefit of the community. The court then recognized that our law, in Articles 2315 and 1934, limited reparation of a tort victim to compensatory damages. In this connection, the court observed that:
article 2315 provides that a person through whose fault damage is caused shall "repair it," and that there is no suggestion of any other penalty to be imposed upon him; that article 1934, § 2, after providing for the actual damages to be recovered for the inexecution of a contract in fraud or bad faith, declares, "but, even when there is fraud, the damages cannot exceed this"; and that paragraph 3 of the same article deals, not with any penalty to be exacted for the benefit of the community, but with damages which become "due" to a party to a contract by reason of his being denied some gratification to which the contract entitled him, or because of some offense or quasi offense committed to his prejudice, which damages this court has held time and again to be compensatory, and not punitive.
Id. at 1041-42, 74 So. at 546 (citations omitted). The court, moreover, disapproved prior judicial expressions countenancing the idea of punitive damages, noting that many such statements arose in dicta or out of a mistaken belief among members of the bench and bar that moral damages, damages repairing injuries to the mind or feelings, and damages insusceptible of assessment by direct testimony are punitive damages, when in reality they are compensatory damages, arising from the mandate of full reparation under Article 2315 and the grant of broad discretion to the jury in assessing damages under Article 1934. See id. at 1042-50, 74 So. at 546-49 (discussing Caspar v. Prosdame, 46 La.Ann. 36, 14 So. 317 (1894); Rutherford v. Railroad Co., 41 La.Ann. 793, 6 So. 644 (1889); McFee v. Railroad, 42 La.Ann. 790, 7 So. 720; Keene v. Lizardi, 8 La. 26 (1835); McGary v. City of Lafayette, 12 Rob. 668, 4 La.Ann. 440 (1846); Black v. Carrollton, 10 La.Ann. 33, 63 Am.Dec. 586 (1855); Varillat v. N.O. & C.R. Co., 10 La. Ann. 88; and Hill v. N.O., O. & G. W.R. Co., 11 La.Ann. 292). Finally, the court concluded that our system of laws, as it had stood until that time, authorized the assessment only of compensatory, and not punitive, damages for personal injury sustained through the fault of another.
Subsequently, the interpretation of the law set forth in Vincent v. Morgan's Louisiana & T.R. & S.S. Co., supra, and the earlier cases, was applied consistently and became an ingrained feature of our jurisprudence. See, e.g., Note, DamagesPunitive or Exemplary Damages Not Recoverable, 1 La. L.Rev. 226 (1938); Huckabay, Comment, The Insurability of Punitive Damages in Louisiana, 48 La.L.Rev. 1161, 1163-64 (1988). As this court observed in Killebrew v. Abbott Laboratories, 359 So.2d 1275 (La.1978), "in Louisiana punitive damages are not allowable unless it be for some particular wrong for which a statute expressly authorizes the imposition of some such penalty." Id. at 1278 (citing McCoy v. Arkansas Natural Gas Co., 175 La. 487, 143 So. 383, cert. denied, 287 U.S. 661, 53 S.Ct. 220, 77 L.Ed. 570 (1932)).
Second, if the courts below assumed that the legislature by adopting the remedy exclusion rule bound itself not to enact any new tort remedies for employees, they were clearly in error. Even if we were willing to *610 concede that the 1914 legislature so intended, that group of lawmakers could not foreclose contrary legislative action in the future. Our state constitution implicitly incorporates the fundamental principle of constitutional law that a legislature cannot bind future sessions and that each subsequent legislature can make its laws prevail over any preexisting legislative enactments. La. Const.1974, Art. III, §§ 1, 2, 15, 19 & 20; see Renthrop v. Bourg, 4 Mart. (O.S.) 97 (1816); Gillespie v. Freeman, 7 La.Ann. 351 (1852). The remedy exclusion rule of the workers' compensation act is an ordinary statutory provision. Its statement that the right or remedy granted to an employee because of an injury for which he is entitled to compensation "shall be exclusive of all other rights and remedies of such employee ... against his employer" is not binding on subsequent legislatures. Therefore, this clause, upon its enactment, excluded only the substantive rights to compensatory damages and means of enforcement then provided by law for employees against their employers because of work-related personal injuries.
Finally, the lower courts erred if they assumed that the remedy exclusion rule was tacitly amended to bar employees' rights to punitive awards against their employers under Article 2315.3 by contemporaneous or subsequent reenactments of Section 1032 of the workers' compensation act containing the remedy exclusion rule. There was no reenactment of the remedy exclusion rule coincident with the enactment of Article 2315.3. None of the amendments to or reenactments of Section 1032 since the original enactment of the workers' compensation act has made any substantive change in the language or effect of the remedy exclusion rule. See La.R.S. 23:1032 and official comments (West 1985 and 1994 Supp.). Likewise, the only amendment to Section 1032 that occurred after the enactment of Article 2315.3 made no substantive change in the words or meaning of the remedy exclusion rule. Act 454 of 1989 merely repeated the rule without change while adding a new subparagraph devoted exclusively to the overruling of the dual-capacity doctrine that had been recognized with respect to company physicians in medical malpractice actions by Ducote v. Albert, 521 So.2d 399 (La.1988). See La.R.S. 23:1032(A)(1)(a)-(b) (West 1994 Supp.).
The general rule of interpretation is that provisions of an original act which are repeated in the body of an amendatory act, either in the same or equivalent words, are considered to be a continuation without change of the original law. State v. Mathe, 219 La. 661, 53 So.2d 802, 805 (1951); Perkins v. Brothers of Christian Schools, 71 So.2d 400, 405 (La.App. 1 Cir.1954); 1A Sutherland Statutory Construction § 22.33 (1993); McCaffrey, Statutory Construction, § 79 (1953); Crawford, Statutory Construction, § 233 (1940); 73 Am.Jur.2d, Statutes, § 322 (1974); 82 C.J.S. Statutes § 384, at 903 (1953); 1993 Uniform Statute and Rule Construction Act (14 U.L.A.) § 14; 1965 Model Statutory Construction Act, (14 U.L.A.) § 20. In other words, where the later statute does not include enough substantive revision to indicate the probability that the legislature has made a fresh start with respect to the provision being interpreted, there is a presumption that the lawmakers intended to retain the substantive status quo, even though as an original enactment the statute would have been interpreted differently. Dickerson, The Interpretation and Application of Statutes, 130-131 (1975). See also 73 Am.Jur.2d, Statutes, § 322 (1974). Those clauses or provisions of the old law or section which are repeated in the amendment "are not to be considered as repealed and again enacted, but to have been the law all along...." McCaffrey, supra, at 159 (quoting Ely v. Holton, 15 N.Y., 595). Therefore, "the re-enactment is declaratory of a continuance of the legislative intent as expressed in the prior act," and thus a court must look to the legislative intent of the original act. Crawford, supra, at 439. Because all of the amendatory acts, including the 1989 Act, simply retained the substantive status quo of the remedy exclusion rule, that provision continues as when first enacted to exclude only an employee's right or remedy for the recovery of compensatory tort damages from the employer and does not affect his new remedy for punitive damages under Article 2315.3.
Moreover, the history and policy of the workers' compensation act create a presumption *611 on the side of preserving the general tort or delictual rights of an injured worker against the actual wrongdoer, in the absence of explicit statutory language limiting or excluding such rights. Roberts v. Sewerage and Water Bd., 634 So.2d 341, 346 (La.1994). The legislature's primary aim in enacting the workers' compensation law was not to abrogate tort remedies that afforded protection to workers. Rather, it was to provide social insurance to compensate victims of industrial accidents because it was widely believed that employees' rights to recover compensatory damages under the general tort law of the time were inadequate to protect them. Prior to the adoption of the workers' compensation scheme, workers recovered compensatory damages in only a small fraction of the cases involving work-related accidents, although all of their injuries subsidized economic growth. This was due largely to the development and strict enforcement of the so-called "unholy trinity" of judicially created employer defenses: assumption of the risk, contributory negligence, and the fellow servant rule. The workers' compensation law was adopted as a compromise in which both sides, workers and employers, gained and surrendered rights. The employees gave up the set of tort remedies for compensatory damages available to them at that timewhich were of dubious value because of the employer defensesin exchange for modest compensation benefits, covering bare essentials, that were made payable regardless of the employee's or employer's fault. The employer surrendered the immunity he otherwise would have enjoyed in cases where he was not at fault, but in return received insulation from liability for compensatory tort damages, being required in no case to pay more than a percentage of the employee's wages. See generally Howard Alan Learner, Note, Restrictive Medical Malpractice Compensation Schemes: A Constitutional "Quid Pro Quo" Analysis to Safeguard Individual Liberties, 18 Harv.J.Legis. 143, 168-70 (discussing "quid pro quo" of workers' compensation scheme); see also Boggs v. Blue Diamond Coal Co., 590 F.2d 655, 658-59 (6th Cir.1979); Roberts, 634 So.2d at 343-44 (La.1994) (citing 13 Malone & Johnson, La.Civil Law Treatise, Workers' Compensation Law and Practice § 32 (1980)); Gagnard v. Baldbridge, 612 So.2d 732, 735 (La.1993); Williams v. Sewerage & Water Board of N.O., 611 So.2d 1383, 1387 (La. 1993); Larson 2A The Law of Workmen's Compensation § 65.11 (1993). Therefore, given the legislature's principal goal of protecting workers, the remedy exclusion rule may not be interpreted to preclude the availability of punitive damages under Article 2315.3 to workers, because the workers' compensation law does not contain any explicit statutory language limiting or excluding an employee's punitive damage action.
Consequently, we conclude that the remedy exclusion rule of the workers' compensation act does not bar an employee from bringing suit against his or her employer for exemplary damages under Article 2315.3. The law of this state, as correctly interpreted and applied, did not grant a right to punitive damages when the workers' compensation law was enacted; thus, the remedy exclusion rule of that act could not and did not have the effect of excluding a right or remedy pertaining to punitive damages. Further, because it is well-settled that a legislature is not bound by the acts of a prior legislature, nothing in the workers' compensation act could have prevented a subsequent legislature from establishing whatever rights and remedies it deemed appropriate. By the same token, nothing in any reenactment of the workers' compensation act indicates a legislative aim to deny employees the right and remedy of punitive awards. For all of these reasons, we conclude that the remedy exclusion rule was intended to exclude only an employee's right and remedy for the recovery of compensatory damages, which, as this court made clear in Vincent v. Morgan's Louisiana & T.R. & S.S. Co., supra, was the only right and remedy a plaintiff had against a tortfeasor at the time of the enactment of the remedy exclusion rule of the workers' compensation act.

B.
The crux of this case is whether Article 2315.3 itself operates to bar an employee from obtaining an assessment of punitive *612 damages against his employer. We conclude that it does not.
Article 2315.3, in pertinent part, provides:
In addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances. * * *
Unless the meaning of Article 2315.3 is qualified by its introductory clause, the statute clearly and unambiguously provides that any plaintiff, including the employee in an action against the employer, may obtain an award of punitive damages upon proof of the essential elements. However, the language of the introductory clause"In addition to general and special damages"is susceptible of different meanings and therefore must be interpreted as having the meaning that best conforms to the purpose of the law. La. Civ.C. art. 10.
To determine the purpose of Article 2315.3 we examine the context of the generally prevailing law of punitive damages from which it derives. Louisiana is one of the few states whose basic law of reparations permits only the award of compensatory damages. In the great majority of jurisdictions, the award in a tort action of "punitive" or "exemplary" damages is allowed where the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime. Prosser & Keeton on Torts § 2, at 9 (5th ed. 1984). Punitive damages are regarded as a fine or a penalty for the protection of the public interest. See, e.g., Browning-Ferris Indus. v. Kelco Disposal Inc., 492 U.S. 257, 287, 297, 109 S.Ct. 2909, 2926-27, 2931-32, 106 L.Ed.2d 219 (1989) (O'Connor, J., concurring and dissenting in part); International Bd. of Elec. Workers v. Foust, 442 U.S. 42, 48, 99 S.Ct. 2121, 2125-26, 60 L.Ed.2d 698 (1979) (quoting Gertz v. Welch, 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974)); Galligan, Augmented Awards: The Efficient Evolution of Punitive Damages, 51 La. L.Rev. 3, 30 (1990); Jeffries, A Comment on the Constitutionality of Punitive Damages, 72 Va.L.Rev. 139, 148 (1986); Prosser & Keeton on Torts, 1-2, at p. 9 (5th ed. 1984); 1 Schleuter & Redden, Punitive Damages, Section 2.2(A)(1) (2d ed. 1989). It is not so much the particular tort committed as the defendant's motives and conduct in committing it which will be important as the basis of the award. Prosser & Keeton, supra, § 2, at 11. Such damages are given to the plaintiff over and above the full compensation for the injuries, for the purpose of punishing the defendant, of teaching the defendant not to do it again, and of deterring others from following the defendant's example. Id. at 9 (citing Scott v. Donald, 165 U.S. 58, 17 S.Ct. 265, 41 L.Ed. 632 (1896); Gostkowski v. Roman Catholic Church, 262 N.Y. 320, 186 N.E. 798 (1933); Gill v. Selling, 125 Or. 587, 267 P. 812 (1928), aff'd, 126 Or. 584, 270 P. 411; Kirschbaum v. Lowrey, 165 Minn. 233, 206 N.W. 171 (1925); McCormick, Damages § 278; Note, Exemplary Damages in the Law of Torts, 70 Harv.L.Rev. 517 (1957); Comment, The Admonitory Function of Punitive Damages and Its Impact on the Law of Fraud and Deceit, 26 Albany L.J. 288 (1962)). Punitive damages thus have more to do with the tortfeasor than with the victim. See La.Civ.C. art. 3546, Revision Comments1991(b). In summary, punitive damages are sums awarded apart from any compensatory or nominal damages, usually as punishment or deterrence levied because of particularly aggravated misconduct on the part of the defendant. Dobbs, Remedies § 3.9; Restatement of Torts § 908 (1939).
Another justification for the punitive or exemplary award is that it provides an incentive to the plaintiff to sue in cases where the public interest requires some action against the defendant, but, in the absence of a punitive award, the plaintiff might be insufficiently encouraged to bring a civil action or press criminal charges. The punitive award under this theory is viewed as a bounty, or as incentive to the plaintiff to act as a kind of "private attorney general." Dobbs, Remedies § 3.9 (1973).
Accordingly, we conclude that the purpose of Article 2315.3 is threefold: (1) to penalize and punish defendants for engaging in wanton or reckless disregard for public *613 safety in the storage, handling, or transportation of hazardous or toxic substances that causes injury to others; (2) to deter the tortfeasors and others who might follow their example from exposing the public to dangers of that kind in the future; and (3) to provide victims injured by such conduct with the incentive to act as the prosecutors of penal laws against such wrongdoers. Article 2315.3 is not designed to repair the injuries of tort victims.
The ambiguous introductory clause of Article 2315.3 must be interpreted as having the meaning that best conforms to the threefold purpose of the law. Considering the clause from that perspective, we conclude that its purpose is to establish the right to seek punitive damages as a legally enforceable claim for punitory damages over and above, separate and apart from the right to reparation or compensatory damages arising from the same facts. This is the meaning that best promotes and harmonizes with the purpose of Article 2315.3. Giving victims injured by the reckless, publicly dangerous conduct described in the statute the incentive to obtain punitive damages awards irrespective of the success or monetary value of their tort claims provides them with additional motivation to pursue their actions. Encouraging all victims of wanton or reckless toxic and hazardous substance handlers to initiate and vigorously pursue actions produces more effective punishment of the targeted class of tortfeasors and deterrence of potential wrongdoers. Therefore, this interpretation of the introductory clause has the meaning that best conforms to the purpose of Article 2315.3 in providing incentives to victims, punishing designated wrongdoers, and deterring them and those who might follow their example.
In establishing the separate and distinct right to seek the exemplary or punitive award, however, the introductory clause of Article 2315.3 does not relieve the plaintiff of the burden of proving the basic factual elements of a tort case. To the contrary, Article 2315.3 itself, by its narrow authorization of punitive damages awards under special circumstances, imposes a more onerous proof requirement than plaintiffs face in ordinary negligence cases. In order to obtain an award of exemplary or punitive damages, the plaintiff first must prove that the defendant's conduct was wanton or reckless. In practice, this standard obliges the plaintiff to prove at least that the defendant proceeded in disregard of a high and excessive degree of danger, either known to him or apparent to a reasonable person in his position. Prosser & Keeton, supra, § 34, at 213-14. In other words, the "wanton" or "reckless" conduct that must be proved is highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent. Id. at 214; see also Griffin v. Tenneco Oil Co., 531 So.2d 498, 501 (La.App. 4 Cir.1988) (quoting Cates v. Beauregard Electric Cooperative, Inc., 316 So.2d 907, 918 (La.App. 3 Cir.1975)). Second, the plaintiff must show that the danger created by the defendant's wanton or reckless conduct threatened or endangered the public safety. Third, the statute requires proof that the defendant's wanton or reckless conduct occurred in the storage, handling or transportation of hazardous or toxic substances. Finally, the plaintiff is required to prove that his or her injury was caused by the defendant's wanton or reckless conduct consisting of all of these elements.
We reject the interpretation of the introductory phrase of Article 2315.3 proposed by BP to the effect that the plaintiff's punitive damage action is contingent upon his or her ability to state a claim for compensatory damages that will survive an exception of no cause of action. In reality, BP's interpretation is a rehash of its previously rejected threshold argumentthat the workers' compensation remedy exclusion clause bars an employee's punitive damage action against the employerand must be declined for the same reasons. Additionally, BP's interpretation would give the clause a meaning that is implausible in view of the law's express provisions, incompatible with its legislative history, and at cross purposes with the main goals of the statute.
Plainly, because employees of hazardous and toxic substance handlers comprise a substantial percentage of the victims who will be *614 injured by the wanton or reckless conduct reprehended by the statute, see, e.g., O'Reilly, Toxic Tort Practice Guide Section 9.02 at 9-3 (2d ed. 1992), exclusion of them as prosecutors of punitive damage actions would not best conform with the purpose of punishing and deterring the designated tortfeasors. If this exclusion is accepted, a significantly large percentage of the targeted wrongdoers will be immunized from exemplary damage actions simply because their wanton or reckless conduct in disregard of the public safety only caused injury to employees. Therefore, BP's proposed interpretation of the introductory clause certainly will not best effectuate Article 2315.3's purposes of punishing and deterring highly unreasonable handling of toxic and hazardous substances that endangers the public.
BP's gloss is not a plausible interpretation of the introductory phrase. Actually, it is an interpolation, inserting new or foreign matter into the text of the phrase, that will drastically reduce the statute's scope and effectiveness. Article 2315.3 expressly grants a right to a punitive award to any "plaintiff[] [whose] injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances." The introductory phrase as written"In addition to general and special damages"does not create any exception to the statute's conferral of a legally enforceable claim to a punitive award. BP's proposed interpretation would insert additional words and revise the preliminary phrase to read: "When a plaintiff has a cause of action for general or special damages, exemplary damages may be awarded in addition, if it is proved...." BP's argument thus requires the courts to presume that the legislature intended an implied exception to the express statutory provisions, excluding as plaintiffs those persons who do not have a right to compensatory damages. As a general rule, an implied exception to a statutory command may not be presumed unless an absurd result is reached by a literal construction of the law. See, e.g., La.Civ.C. art. 9; United States v. Rutherford, 442 U.S. 544, 552, 99 S.Ct. 2470, 2475, 61 L.Ed.2d 68 (1979); 2A Sutherland Statutory Construction § 47.11 (5th ed. 1992). Application of the statute without such an implied exception best conforms to the purpose of Article 2315.3 and does not lead to absurd consequences. Furthermore, as has been observed, BP's interpretation in fact is only a thinly disguised surrogate of its earlier attempt to exclude employees from the plaintiff class by impliedly stretching the worker's compensation act's remedy exclusion rule. Employees of defendant hazardous and toxic substance handlers evidently would be the only persons excluded by the implied exception proposed by BP. If any such exception had been intended by the legislature, it is difficult to believe that the lawmakers would not have expressly amended Article 2315.3 or the remedy exclusion rule of the workers' compensation act, rather than resorting to such a vague, roundabout method. Consequently, we conclude that it is highly improbable that the legislature intended to modify radically the express language of the statute and drastically to reduce its range of operation by the obscure implication relied upon by BP.
Moreover, the history and context of the preliminary phrase of Article 2315.3 indicate that it was never intended to make the punitive damage action contingent upon the plaintiff's compensatory tort action. Instead, it was originally formulated to meet certain First Amendment concerns raised by the 1976 law authorizing punitive damages awards in connection with defamation, libel or slander judgments. Civil Code Article 2315.1, enacted in 1976 and repealed in 1980, in pertinent part, provided:
In addition to general and special damages, the plaintiff who obtains a judgment because of having been defamed, libeled, or slandered may be awarded punitive damages and reasonable attorneys fees, if it is proved that the defamatory, libelous, or slanderous statement on which the action is based was made with knowledge of its falsity or reckless disregard of whether it was false or not.
Article 2315.1 authorized public officials and public figures to obtain punitive damages awards against media defendants. The Work of the Louisiana Legislature for the 1976 Regular SessionA Student Symposium, 39 *615 La.L.Rev. 89, 112 (1976). In anticipation of constitutional challenges, the statute was drafted to conform with the United States Supreme Court's First Amendment decision in Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). See Legislative Symposium, supra, at 113-14. In Gertz, the Court made clear that a public official or figure cannot be awarded punitive or presumed damages without proof of actual malice according to the New York Times standard of knowing or reckless falsity. See New York Times Company v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Although at common law presumed damages are ostensibly compensatory damages, they require no proof of actual injury. Thus, presumed damages are distinguishable from general and special damages, which are based on proof of actual injury. It is therefore evident that the drafters of Article 2315.1 used the preliminary phrase to indicate that the only damages authorized by the statute "[i]n addition to general and special damages" were punitive damages based on actual malice according to the New York Times standard as approved by Gertz. The introductory phrase was thus intended only to distinguish between general and special compensatory damages based on actual injury and punitive damages based on malice rather than injury. The phrase was not designed to make punitive damages contingent upon an award of or a statement of a cause of action for compensatory damages.
The legislature's use of the introductory phrase in a series of diverse punitive damage statutes following the repeal of Civil Code Article 2315.1 (1976) indicates clearly that the phrase does not contain an implicit exception or proviso excluding employees or making punitive awards contingent upon compensatory damage actions. Instead, the legislative history suggests that the drafters ignored the First Amendment roots and overtones of the preliminary phrase and used it indiscriminately as legislative boilerplate, as if it were ready-made for any punitive damage law. In addition to Article 2315.3, Civil Code Article 2315.4 (1984) (Injury by wanton and reckless DWI) and Civil Code Article 2315.7 (1993) (Injury by wanton and reckless child sexual abuse) each begin with the same wording as former Article 2315.1: "In addition to general and special damages, exemplary damages may be awarded...." The use of the introductory phrase in punitive damage laws designed to punish and deter malicious libel by newspapers and broadcasters, wanton and reckless drunken driving, and wanton and reckless child sexual abuse clearly indicates that the phrase was not intended to exclude employees from the class of punitive damage plaintiffs. Defendants in these types of punitive damages actions will seldom, if ever, be in a position to interpose the workers' compensation remedy exclusion rule defense as the employer of the plaintiff. The phrase's history and use thus make it highly improbable that the legislature intended the introductory phrase of Article 2315.3 as an implicit exception or proviso making the punitive damages action contingent upon the plaintiff's compensatory damage tort suit.
BP relies on what it contends is a generally recognized rule of law that exemplary or punitive damages are only recoverable where the plaintiff is entitled to and is awarded actual or compensatory damages against the defendant. This argument is not well grounded or apposite to the present case.
A large number of cases from other jurisdictions make the statement, in one form or another, that punitive damages may not be recovered in the absence of a proven actual loss or damage by the plaintiff. As simple as this sounds, there is a great deal of difficulty in knowing what it means, and hardly any of the cases provide a great deal of assistance. Dobbs, Remedies § 3.9; Schlueter & Redden, Punitive Damages § 6.1(D)(2). The courts in some jurisdictions have taken the view that there must be a finding and award of actual or compensatory damages before an award of punitive damages may be made, although a number of these courts make an exception when dealing with torts in which general damages are inherent or presumed. Tinney, Sufficiency of Showing of Actual Damages to Support Award of Punitive DamagesModern Cases, Annotation, 40 ALR4th 11, §§ 2[a], 3, 10 (1985). Other courts take the view that the important factor is the sustaining of the legal injury, rather *616 than its monetary assessment, and consequently hold that proof of a state of facts showing the invasion of a legal right is sufficient to support an award of punitive damages. Id. § 4. In a few states, the courts have expressed conflicting views, or views that vary in particular circumstances, on this question. Id. § 5. BP's argument thus ignores the disparity of viewpoints among jurisdictions as to the meaning of "actual damage" and the fact that many jurisdictions consider the proof of injury alone a sufficient predicate for punitive damages.
More important, however, the legislature did not incorporate the "actual damage" requirement in Article 2315.3 or any other of our special punitive damage statutes. The only requirement made by Article 2315.3 is proof that plaintiff's actual "injuries" were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances. BP conceded that Billiot sustained injuries by these means for purposes of the motion for summary judgment. Accordingly, at this stage of the case Billiot has satisfied the only predicate for punitive damages required by Article 2315.3.

III.
The final issue is whether the trial court correctly interpreted Article 2315.3 as limiting the plaintiff's right to seek a punitive award to cases in which the plaintiff's injury is caused by the "inherent characteristic" or "nature" of a toxic or hazardous substance. Based on this interpretation, the trial court, as an alternative ground for its decision, concluded that summary judgment rejecting Billiot's demands was required because there was no genuine dispute as to the fact that Billiot's injuries were caused by the heat of the liquid and not the inherent nature or character of the substance. Although the court of appeal pretermitted this issue, BP is entitled to urge here any matter of record in support of the judgment below. We conclude that the trial court's interpretation of Article 2315.3 was based on an error of law because it judicially added limiting words to the law. This interpolation was unjustified because Article 2315.3 is clear and unambiguous and its application as written does not lead to absurd consequences.
Article 2315.3 provides that exemplary damages may be awarded to a plaintiff whose "injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances." When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature. La.Civ.Code art. 9; Tarver v. E.I. Du Pont De Nemours and Co., 634 So.2d 356 (La. 1994). With respect to the issue under consideration, Article 2315.3 is not susceptible of different meanings and its application as written does not produce a result so irrational, unnatural, or inconvenient that it cannot be supposed to have been within the intention of persons of ordinary intelligence and discretion.
The statute plainly asserts that any person may receive a punitive award upon proof that his or her injury was caused by the particularly aggravated misconduct of a defendant, as described by the law. Application of Article 2315.3 as so written does not produce ridiculously unreasonable, unsound or incongruous results. On the contrary, putting the statute to use in this way produces effects that are harmonious and compatible with the goals of the law, viz., to punish defendants guilty of the statutorily proscribed outrageous conduct and to deter them and others who might follow their example in the future, all in the interest of protecting the public from harm by toxic and hazardous substances. At the same time, Article 2315.3 reasonably and soundly requires proof of injury as a predicate for each plaintiff's punitive award. By authorizing only injured persons to obtain punitive awards, Article 2315.3 designates an appropriate class of private attorneys general to prosecute claims for punitive awards against aggravated toxic tortfeasors and establishes a standing to sue requisite to insure that each plaintiff is sufficiently affected to assure that a justiciable controversy is presented.
*617 Article 2315.3 clearly does not limit its grant of the right to seek a punitive award only to persons whose injuries are caused by the inherent nature or character of the toxic or hazardous substance. To interpret the statute as if it contained such a limitation adds foreign matter to the text and undermines the legislative initiative and objective. Instead of a law authorizing every person injured by the statutorily reprobated outrageous conduct to seek a punitive award from every defendant guilty of such wrongdoing as designed by the legislature, the provision would immunize a substantial number of storers, handlers and transporters of hazardous substances who are guilty of endangering the public by wanton or reckless activity. This interpretation of Article 2315.3 would drastically and unjustifiably weaken its legislatively intended punitive and deterrent effects, giving it a meaning that clearly does not conform well to the purposes of the law.
The trial court was not authorized to use Article 2315.3 by analogy as part of a judicial duty-risk analysis as if it were dealing with a criminal statute in a civil suit for ordinary damages to compensate the victim's injury. Article 2315.3 is not a criminal statute. This is not an action to compensate the plaintiff's injury with ordinary compensatory damages. Article 2315.3 authorizes the assessment of a civil penalty for the breach of a statutorily prescribed duty that it imposes upon the handlers of toxic and hazardous substances for the protection of the public. The penalty is payable to the victims whose injuries are caused by the defendants' breach of their duties to the public. Nevertheless, the purposes of the duty and the penalty are not to compensate the victim but to protect the public from risks of harm from toxic and hazardous substances by punishing and deterring violators of that duty to the public. Therefore, the statute cannot be construed to impose a duty upon the defendant merely to refrain from outrageous conduct resulting in the injury of an individual by the hazardous or toxic nature of a substance. Instead, Article 2315.3 imposes a duty on the defendant, for the protection of the public, to refrain from wanton or reckless conduct in the handling, transportation or storage of hazardous or toxic substances, that endangers the public, in default of which the defendant may be ordered to pay punitive damages to any person caused injury by his aggravated misconduct. Consequently, the trial court erred in treating Article 2315.3 as if it merely imposed a duty upon the defendant to exercise care not to injure individual victims with hazardous or toxic substances.
The trial court quoted with approval from the United States District Court's decision in Pickering v. Henry, 720 F.Supp. 69 (M.D.La.1989), as follows:
This court concludes that Article 2315.3 must be limited to those situations where the injury to the plaintiff is caused by the hazardous or toxic nature of the substance involved. Id. at 72.
For the reasons previously assigned, we have reached a different conclusion in the interpretation of the statute. Article 2315.3 clearly and unambiguously does not grant the right to punitive awards only to plaintiffs whose injuries are caused by the hazardous or toxic nature of the substance involved. That law grants the right to exemplary awards to all plaintiffs whose injuries are caused by the defendant's wanton or reckless disregard for public safety in the storage, handling or transportation of hazardous or toxic substances. In Pickering, the court assumed arguendo that this was the literal meaning of the statute but concluded that Article 2315.3 must be limited to situations in which the plaintiff's injury was caused by the hazardous or toxic nature of the substances because application of the clear and unambiguous words of the law would lead to absurd consequences extending exemplary damages to all vehicle accidents involving gasoline powered vehicles or even to all accidents involving trucks carrying hazardous or toxic materials as cargo. Pickering, 720 F.Supp. at 71-72. If Article 2315.3 is correctly applied, however, it will not lead to the drastic and absurd consequences envisioned by the Pickering court. Article 2315.3 clearly excludes the vast majority of vehicular accidents from its ambit. Specifically, under the plain terms of the law, awards of punitive damages are not authorized in the following classes of vehicular accidents: (1) Cases in which the defendant's misconduct is not so *618 aggravated or outrageous as to rise to the level of wantonness or recklessness; (2) Cases in which the defendant's wanton or reckless misconduct does not create a danger to the public; (3) Cases in which the aggravated misconduct endangering the public does not occur in the storage, handling or transportation of hazardous or toxic substances; (4) Cases in which the plaintiff's injury was not caused by the defendant's misconduct meeting all of these requirements. For similar reasons, punitive awards will not be authorized in the great majority of the cases arising out of other types of accidents involving substances that arguably may be classified as toxic or hazardous. Because the language of Article 2315.3 itself carefully limits the availability of exemplary or punitive damages, there is no justification for the courts to read words into the statute to ensure the reasonableness of the statute's application.
For the reasons assigned, the judgments of the trial and appellate courts are reversed and the case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
LEMMON, J., concurs and assigns reasons.
MARCUS, J., dissents and assigns reasons.
HALL, J., dissents and will assign reasons.
LEMMON, Justice, concurring.
I disagree that the 1984 punitive damages statute of general application outranks the 1914 exclusive remedy statute of general application because the Legislature did not expressly state, in either place, that the punitive damages remedy was one of the remedies excluded from employee's "rights and remedies" by the Workers' Compensation law. In my view La.Rev.Stat. 23:1032 A's provision that "[t]he rights and remedies herein granted to an employee ... shall be exclusive of all other rights and remedies of such employee" (emphasis added) means what it saysall other rights and remedies, whether existing at the time of adoption of the Workers' Compensation law or enacted thereafter, are excluded from the employee's array of recoverable items against the employer. While I agree that the Legislature in 1914 did not intend to prevent itself from creating a future punitive damages remedy for employees against employers, the Legislature in 1984 did nothing to indicate an intention that Section 1032 A did not continue to exclude "all other rights and remedies" from employees in actions against employers.
Nevertheless, I concur in the result reached by the majority, because Section 1032 B expressly excepts from the exclusivity provisions of Section 1032 A "the liability of the employer ... to a fine or penalty under any other statute." La.Civ. Code art. 2315.3 is a statute imposing "a fine or penalty" on employers and others who cause injury by "wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances."
Punitive damages are damages, other than compensatory or nominal damages, which are awarded against a person to punish him or her for outrageous conduct or acts done with a reckless indifference to the interests of others, and to deter the actor and others from similar misconduct in the future. Restatement (Second) of Torts § 908(1) (1979). Punitive damages have been described by judges and academicians as "private fines," Gertz v. Robert Welch, Inc., 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974), and as "in the nature of a civil penalty," 1 Linda L. Schlueter & Kenneth R. Redden, Punitive Damages § 2.1(c) at 23 (2d ed. 1989). Punitive damages serve the same purposes as "a fine imposed after a conviction of a crime," although recovery is awarded to the successful plaintiff and not to the state. Restatement (Second) of Torts § 908 cmt. a (1979). A fine, according to Black's Law Dictionary, "may include a ... penalty recoverable in a civil action." The treatment of Article 2315.3's exemplary damages as a "fine or penalty" under Section 1032 B furthers the punishment and deterrent purposes of Article 2315.3, as well as the purposes of the "fine and penalty" exception of Section 1032 B.
Finally, the court of appeal erred in accepting defendant's contention that the "fine *619 or penalty" exception of Section 1032 B was intended to exclude only those statutes specifically imposing fines on employers in employment related matters. The decision of the court of appeal is contrary to the unambiguous provision of Section 1032 B that "[n]othing in this Chapter shall affect the liability of the employer ... to a fine or penalty under any other statute." (emphasis added). The intermediate court's interpretation of the unambiguous, all inclusive statutory language to limit its applicability to employment related matters is contrary to the rules of statutory interpretation which require unambiguous statutes generally to be enforced as written.
In summary, I concur in the majority's decision that an employee is not precluded by La.Rev.Stat. 23:1032 A from recovering punitive damages against his or her employer under La.Civ.Code art. 2315.3, because of the "fine or penalty" exception of La.Rev.Stat. 23:1032 B.
MARCUS, Justice (dissenting).
I disagree with the majority's holding that the worker's compensation act does not bar an employee from recovering punitive damages under La.Civ.Code art. 2315.3. La.R.S. 23:1032(A)(1)(a) of the worker's compensation act clearly provides that the "rights and remedies granted to an employee ... shall be exclusive of all other rights and remedies of such employee ... against his employer." (emphasis added). The majority correctly finds that this provision excludes the employee's right to compensatory damages. It logically follows, therefore, the employee is not entitled to exemplary damages under art. 2315.3, since such damages are awarded "in addition to general and special damages." (emphasis added). The use of this language demonstrates that the legislature did not intend to except art. 2315.3 from the exclusivity of the compensation statute.
Secondly, I agree with the trial judge's alternate holding that plaintiff's injury was not caused by an inherent characteristic or nature of a toxic or hazardous substance. The evidence shows that plaintiff was not injured by the hazardous nature of the substance, but was burned by the heat of the substance. Many non-hazardous substances, including ordinary water, could have caused a similar injury. Accordingly, even assuming the exclusivity provision did not apply, I would not extend art. 2315.3 to the facts of this case.
For these reasons, I respectfully dissent.
HALL, Justice, dissenting.
The Louisiana worker's compensation law, LSA-R.S. 23:1032(A)(1)(a) provides that the "rights and remedies granted to an employee on account of an injury ... for which he is entitled to compensation under this chapter... shall be exclusive of all other rights and remedies of such employee ... against his employer ... for said injury...." There is no justification under principles of statutory construction or otherwise for the majority opinion's conclusion that this clear and unambiguous language, "all other rights and remedies of such employee," means only those rights and remedies existing in 1914 when the worker's compensation law was originally enacted. Limiting the meaning of "all other rights and remedies" to include only compensatory damages and not to include punitive damages is to read words into the statute that do not exist, an inappropriate practice reprobated in the second section of the majority opinion.
For decades the compensation act has been regarded as a compromise whereby employees gave up tort remedies against employers in exchange for compensation benefits. Prior to this case, in spite of expansion of tort rights and remedies, no decision has suggested that only those tort remedies recognized in 1914 were included in the exclusivity provision. There is no more reason that the term "all other rights and remedies" should be frozen in time with the enactment of the worker's compensation law than for the term "fault" as used in LSA-C.C. art. 2315 to be frozen in time with the enactment of the Civil Code in 1870, or some earlier code.
Leaving the tort remedy of punitive damages outside of the exclusivity of the worker's compensation act goes counter to the scheme of the act and introduces issues of tort liability *620 between employer and employee with all attendant shortcomings and problems (unpredictability, litigation costs, proof of wantonness or recklessness, available defenses) which were, presumably, done away with long ago when the worker's compensation law was adopted.
There is no indication that the legislature in adopting LSA-C.C. art. 2315.3 providing for punitive damages "in addition to general and special damages" for tort victims generally whose injuries are caused by wanton or reckless handling of hazardous materials, intended to except this fault-based right to recover punitive damages from the exclusivity provision of the compensation act. Had that been intended, surely the compensation act would have been amended to specifically so provide, as it was when intentional acts of employers were excepted from the exclusivity provision.
The majority errs in holding that the exclusivity provision of the compensation act does not bar an employee from recovering punitive damages from an employer under Article 2315.3.
I also take issue with the holding that Article 2315.3 "does not limit its grant of the right to such a punitive award only to persons who injuries are caused by the inherent nature or character of the toxic or hazardous substance," and that "the trial court erred in treating Article 2315.3 as if it merely imposed a duty upon the defendant to exercise care not to injure individual victims with hazardous or toxic substances." First of all, the exact holding is not entirely clear, being cast in the negative of what is not the proper application of the law. Surely the article contemplates that the hazardous or toxic substance being handled must play a part in the injury sustained before punitive damages are recoverable. In this case, it appears that the plaintiff may have been harmed by the hazardous substance but not by its hazardous or toxic nature. I suggest that, if the exclusivity provision is not to be applied, the facts of this case should be developed at trial on the merits and that decision of this difficult fact-sensitive issue be reserved until after trial.
I respectfully dissent.

ON APPLICATION FOR REHEARING
PER CURIAM[*]
The application for rehearing in this matter is denied. However, Part III of the opinion is modified as follows. The interpretation of Civil Code Article 2315.3 in our original opinion is correct. But it is not necessary to include all of the implications of that interpretation in our holding in order to decide the present case. Because the victim in the present case was injured by the toxic substance itself, it is not necessary at this time to decide whether a victim whose injury was not causally related to the hazardous or toxic substance may obtain a punitive award. Accordingly, we hold in the present case only that a victim may obtain punitive damages under Civil Code Article 2315.3 when his or her injury is caused by a hazardous or toxic substance that the defendant wantonly or recklessly stores, handles or transports in disregard of the public safety.
LEMMON, Justice, concurring in the Denial of the Application for Rehearing.
I agree to some extent with the applicants for rehearing on the causation issue. In my view, the legislative intent of La.Civ. Code art. 2315.3 was to impose punitive damages on persons who acted with wanton or reckless disregard for public safety in the storage, handling or transportation of hazardous or toxic substances only when the injury was caused by the hazardous or toxic substances. See Fowler v. Roberts, 556 So.2d 1 (La.1989). Thus, a truck driver transporting hazardous materials, whose wanton or reckless disregard for public safety in operating the vehicle causes a collision with another vehicle, is not liable for exemplary damages with respect to the resulting injuries if the injuries would have been no different had the driver been transporting furniture.
In the present case, however, the tort victim's injuries were caused by the toxic substance, and the causation requirement was *621 met. I therefore concur in denying rehearing.
NOTES
[*] Marcus and Hall, JJ., vote to grant rehearing. Lemmon, J., concurs in the denial of the application for rehearing and assigns reasons.
[*] Watson, J., not on panel. Rule IV, Part 2, § 3.
[1] Article 2315.3 authorizes only "exemplary damages" by name. However, "exemplary damages" and "punitive damages" have the same generally prevailing meaning and are used interchangeably. See, e.g., Vincent v. Morgan's Louisiana & T.R. & S.S. Co., 140 La. 1027, 74 So. 541, 545 (La.1917); Prosser & Keeton on Torts § 2, at 9 (5th ed. 1984).
[*] Watson, J. not on panel. Rule IV, Part 2, § 3.