665 So.2d 1323 (1995)
Richard LEFLORE and Cynthia Leflore
v.
Brian R. COBURN, State of Louisiana through the Department of Transportation and Development, and Liberty Mutual Insurance Company.
Nos. 95-CA-0690, 95-C-0249.
Court of Appeal of Louisiana, Fourth Circuit.
December 28, 1995.
Rehearing Denied January 17, 1996.
Writ Denied March 29, 1996.
*1326 Frank J. D'Amico, Darla D'Amico, Frank J. D'Amico, APLC, New Orleans, for Plaintiffs-Appellants.
Burk K. Carnahan, Keith M. Matulick, Lobman, Carnahan and Batt, Metairie, for Appellee, Allen Jaeger.
Charles A. Kronlage, Jr., Charles A. Kronlage, Jr., APLC, New Orleans, for Defendant-Appellee, Allen R. Jaeger.
*1327 Robert I. Baudouin, Boggs, Loehn & Rodrigue, New Orleans, for Commercial Union Ins. Co.
C. Gordon Johnson, Jr., Charles L. Chassaignac, IV, Porteous, Hainkel, Johnson & Sarpy, New Orleans, for State Farm Fire and Cas. Co.
Before BYRNES, PLOTKIN and WALTZER, JJ.
BYRNES, Judge.
This case involves two appeals from summary judgments and an application for supervisory writs, all of which have been consolidated.
The following facts are undisputed: On July 19, 1986, Richard Leflore allegedly suffered severe injuries in an automobile collision with a truck driven by Brian R. Coburn. The truck driven by Coburn was allegedly owned by Hibernia Roofing and Metal Works, Inc. Hibernia Roofing's insurer was Commercial Union Insurance Company.
At the time of the accident Mr. Leflore was employed by Allen Jaeger Seafood, Inc. Mr. Leflore and a co-worker, Mr. Joe Billo, were being driven home after work by another of their co-workers, Sidney Becker,[1] in a van owned by their mutual employer, Allen Jaeger Seafood, Inc. This ride was provided to the Mr. Leflore (according to plaintiffs' brief) "at the instruction of Mr. Jaeger" who was the president of Allen Jaeger Seafood, Inc.
Plaintiffs, Mr. Leflore, his wife, and his minor son, sued numerous defendants for damages arising out of the accident. On July 29, 1994, the trial court denied the request of State Farm Fire and Casualty, in its capacity as Allen Jaeger's personal insurer under his homeowner's and umbrella policies, to be dismissed from these proceedings on motion for summary judgment. In the same judgment the trial court granted State Farm Mutual Automobile Insurance Company's motion for summary judgment and dismissed it from the case in its capacity as the insurer of Allen Jaeger's personal automobile. Plaintiffs do not contest the dismissal of State Farm Mutual Automobile Insurance Company on this appeal.
On September 30, 1994, the trial court granted Allen Jaeger's motion for summary judgment and dismissed with prejudice the plaintiffs' claims against him individually. Plaintiffs' motion for a new trial was denied. Plaintiffs appeal. We affirm this judgment.
On November 21, 1994, the trial court again denied a State Farm Fire and Casualty motion for summary judgment. At the same time the trial court denied Liberty Mutual Insurance Company's motion for summary judgment, but granted Commercial Union Insurance Company's motion for summary judgment. The trial court's ruling regarding Liberty Mutual has not been raised on this appeal, but plaintiffs appeal the ruling in favor of Commercial Union. We reverse this judgment.
State Farm Fire and Casualty's request for a new trial was denied on December 16, 1994. State Farm Fire and Casualty applied to this Court for supervisory writs to review the adverse judgments of July 29, 1994, November 21, 1994, and December 16, 1994. The plaintiffs and State Farm Fire and Casualty moved to have the writ application consolidated with the pending appeals. This has been done. We grant writs and reverse.

I. STANDARD OF REVIEW
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Reynolds v. Select Properties, Ltd., 93-1480 (La. 4/11/94), 634 So.2d 1180; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). A summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). All evidence and *1328 inferences drawn from the evidence must be construed in the light most favorable to the party opposing the motion. Carr v. City of New Orleans, 622 So.2d 819, 822 (La.App. 4th Cir.1993) and Dibos v. Bill Watson Ford, Inc., 622 So.2d 677, 680 (La.App. 4th Cir. 1993). To satisfy his burden, the party moving for the summary judgment must meet a strict standard by showing that it is quite clear as to what the truth is, and that excludes any real doubt as to the existence of material fact. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981). The papers supporting the position for the party moving for the summary judgment are to be closely scrutinized while the opposing papers are to be indulgently treated, in determining whether mover has satisfied his burden. Vermilion, supra.
As president of the company, Mr. Jaeger was both an officer of Mr. Leflore's employer, Allen Jaeger Seafood, Inc., and Leflore's fellow employee. The trial court ruled that the exclusive remedy rule of the Worker's Compensation law, LSA-R.S. 23:1032, prevented plaintiffs from suing Mr. Jaeger because the accident occurred in the course and scope of Leflore's and Jaeger's employment with Allen Jaeger Seafood, Inc. We agree.

II. THE "FINE OR PENALTY" EXCEPTION TO THE EXCLUSIVE REMEDY RULE DOES NOT APPLY TO THIS CASE.
LSA-R.S. 23:1032 states:
Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder ... to a fine or penalty under any other statute. [Emphasis added.]
Apparently, Allen Jaeger Seafood, Inc. failed to obtain Worker's Compensation insurance. This failure coupled with the bankruptcy of Allen Jaeger Seafood, Inc. made Mr. LeFlore's Worker's Compensation remedy worthless. LSA-R.S. 22:1169 provides that "Failure on the part of any employee to secure the payment of compensation provided in the Worker's Compensation Act shall have the effect of enabling the secretary of labor ... to proceed against the employer [emphasis added], and to collect penalties as provided in R.S. 23:1170," which is a fine of up to $250 per employee for a first failure and up to $500 per employee for each subsequent offense.
Plaintiffs argue that the fine established by LSA-R.S. 22:1170 gives them the right to proceed against Mr. Jaeger in tort, just as Billiot v. B.P. Oil Co., 93-1118 (La. 9/29/94), 645 So.2d 604 stated that the exemplary or punitive damages provided by LSA-C.C. art. 2315.3 were an exception to the exclusive remedy rule of Worker's Compensation. Although there is much debate in the legal community as to what Billiot really stands for, it does not apply to this case under any of its possible interpretations. The Billiot exemplary damages provided by LSA-C.C. art. 2315.3 are recoverable by the injured party. The fine provided by LSA-R.S. 23:1170 is recoverable only by the Secretary of Labor or his designee. LSA-R.S. 22:1169. The penalty statute confers no right on any employee to bring a personal action for the statutory penalty, and the statute confers no right on any employee to any penalty proceeds. Instead the penalty proceeds are deposited into the worker's compensation enforcement revolving fund. The right to pursue and receive the fines imposed by LSA-R.S. 23:1170 is reserved to the sovereign and/or its agencies in the same way as traffic fines. Any Worker's Compensation fines to which Allen Jaeger Seafood, Inc. might be subject are totally extraneous to plaintiffs' claims. Cf. Clausen v. Fidelity & Deposit Co. of Md., 95-1223 (La.App. 1 Cir. 7/26/95), 660 So.2d 83, where the court held that the enforcement and penalty powers of the Insurance Commissioner create no private cause of action.
Plaintiffs obtained a Worker's Compensation judgment against Allen Jaeger Seafood, Inc. on January 5, 1990,[2] but Allen *1329 Jaeger Seafood, Inc.'s bankruptcy and failure to obtain compensation insurance prevents Mr. Leflore from collecting the Worker's Compensation benefits to which he is entitled. Therefore, plaintiffs contend that the immunity from tort liability provided by the Worker's Compensation law should not protect Allen Jaeger. Kennington v. H. Blume Johnson, 638 So.2d 1066 (La.1994). We disagree. Kennington is inapplicable. In Kennington the issue before the court was whether out of state employment was covered under the Louisiana Worker's Compensation law. Kennington held only that if the employee's employment was not covered by the Louisiana Worker's Compensation statute, e.g., out of state employment with no connection to this state, then "no statutory employer defense" may be used to defeat the injured employee's tort claim. Kennington does not stand for the proposition that where the injured employee's employment is covered by the Louisiana Worker's Compensation statute, that employee's inability to collect the benefits to which he is entitled gives him the right to proceed in tort in spite of the statutory employer defense. The Worker's Compensation law provides no exceptions to the exclusive benefit rule based on the insolvency of the employer, the insolvency of the worker's compensation insurer, or the failure of the employer to obtain worker's compensation insurance. While the Louisiana Worker's Compensation law tries to assure that benefits will be available to those who are entitled to receive them, the law neither guarantees the collectibility of worker's compensation claims, nor does it provide an alternative remedy in tort when the benefits are not collectible. Plaintiffs can cite no contrary authority.
Plaintiff argues that he has no effective worker's comp remedy, because of Allen Jaeger Seafood, Inc.'s bankruptcy and its failure to purchase comp insurance and thus there is no tort immunity for Jaeger because of the absence of a "quid pro quo." LSA-R.S. 23:1032 sets out the exceptions to tort immunity, and neither insolvency, bankruptcy nor failure to purchase insurance are among them.
Plaintiff confuses Allen Jaeger, individually, with the corporation. No basis is suggested and no allegation is made to support piercing the corporate veil to make Mr. Jaeger responsible for the corporation's obligation to the plaintiff. Plaintiffs' brief states unequivocally that: "Allen Jaeger is a distinct and separate person from the corporation, Allen Jaeger Seafood, Inc...." Allen Jaeger Seafood, Inc. was Mr. Leflore's employer, not Allen Jaeger individually, and plaintiffs do not contend otherwise. Therefore, even if we accept for purposes of argument that the penalty for failure to obtain worker's compensation insurance is the loss of tort immunity, the only party responsible for such a failure in this case would be Mr. Leflore's employer, Allen Jaeger Seafood, Inc., not Allen Jaeger individually. Neither Allen Jaeger Seafood, Inc. nor its insurer are before this Court on these consolidated appeals and writ.
We find no error in the trial court's summary judgment dismissal of Allen Jaeger from this litigation.

III. MR. LEFLORE WAS ACTING IN THE COURSE AND SCOPE OF HIS EMPLOYMENT WHEN HE WAS INJURED.
Plaintiffs cite numerous cases stating the general rule that an employee traveling to and from work is not considered to be acting in the course and scope of his employment. This Court agrees that this is the general rule, but even the cases cited by the plaintiffs hold that:
An exception to the rule that employees are not in the course of employment going to and from work is recognized when transportation is furnished as an incident of employment, either through a vehicle, a conveyance and driver, or payment of expenses.
Michaleski v. Western Preferred Cas. Co., 472 So.2d 18, 20 (La.1985).
The undisputed material facts are that the vehicle was owned by Mr. Leflore's *1330 employer, Allen Jaeger Seafood, Inc., and that both it and the driver were provided to Mr. Leflore, according to the plaintiffs' brief, "at the instruction of Mr. Jaeger" who was the president of Mr. Leflore's employer in order to drive Mr. Leflore home from work. Applying the law to these undisputed material facts, this Court finds that Mr. Leflore was injured in the course and scope of his employment.
Plaintiffs contend that the question of whether an incident arises in the course and scope of employment is one that cannot be decided by motion for summary judgment as a matter of law. It is true that where facts material to the course and scope question are in dispute, summary judgment is not the proper vehicle for resolving such a dispute. A fact is material if it is essential to a plaintiff's cause of action under the applicable theory of recovery and without which plaintiff could not prevail. Generally, material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Prado v. Sloman Neptun Schiffahrts, A.G., 611 So.2d 691, 699 (La.App. 4th Cir.1992), writ not considered 613 So.2d 986 (La.1993).
However, where, as here, the material facts supporting a finding that Mr. Leflore was injured in the course and scope of his employment are not in dispute, the question of course and scope may be disposed of on motion for summary judgment. The trial court made no error in finding that Mr. Leflore was within the course and scope of his employment when he was injured because there were no material fact issues in dispute.

IV. IT WAS ERROR TO DISMISS PLAINTIFFS' CLAIMS AGAINST COMMERCIAL UNION INSURANCE COMPANY ON MOTION FOR SUMMARY JUDGMENT
The truck which collided with the van in which Mr. Leflore was a passenger was driven by Brian R. Coburn. Plaintiffs allege that the truck Mr. Coburn was driving was owned by Hibernia Roofing and Metal Works, Inc. Plaintiffs sued Mr. Coburn, Hibernia Roofing, and Hibernia Roofing's vehicle liability insurer, Commercial Union Insurance Company. Mr. Coburn has apparently disappeared and Hibernia Roofing has gone bankrupt,[3] leaving only Commercial Union Insurance Company to answer for the truck.[4] The trial court dismissed plaintiffs' claims against Commercial Union Insurance Company on motion for summary judgment because the Commercial Union Policy provided no coverage for the vehicle driven by Mr. Coburn.
Where the trial court is presented with a choice of reasonable inferences to be drawn from subsidiary facts contained in affidavits, exhibits, and depositions, reasonable inferences must be viewed in the light most favorable to the party opposing the motion. Duvalle v. Lake Kenilworth, Inc. 396 So.2d 1268 (La.1981). No summary judgment will be granted even if the trial court has grave doubts regarding a party's ability to establish disputed facts. Aydell v. Charles Carter & Co., Inc., 388 So.2d 404 (La.App. 1st Cir.1980), writ denied 391 So.2d 460 (La.1980). The fact that a party is unlikely to prevail at a trial on the merits is an insufficient basis for rendering a summary judgment against that party. Chapeuis v. Cassimano, 568 So.2d 606 (La.App. 4th Cir.), writ denied 571 So.2d 629 (La.1990). This is true no matter how small the chances of the party opposing the motion to ultimately prevail appear to be. Dearie v. Ford Motor Co., 583 So.2d 28 (La.App. 5 Cir.), writ denied 588 So.2d 1117 (La.1991). It is not the function of the trial court on a motion for summary judgment to determine or even inquire into the merits of the issues raised. Morris v. Louisiana Coca-Cola Bottling Co., Ltd., 354 So.2d 659 (La.App. 1st Cir.1977). The weighing of conflicting evidence on a material *1331 fact has no place in summary judgment procedure. Mecom v. Mobil Oil Corp., 299 So.2d 380 (La.App. 3rd Cir.1974), writ denied 302 So.2d 308 (La.1974). Testimony should neither be received nor considered, even with the consent of counsel, to decide a motion for summary judgment. Urban Management Corp. v. Burns, 427 So.2d 1310 (La.App. 2 Cir.1983); Hemphill v. Strain, 341 So.2d 1186 (La.App. 1st Cir.1976), writ denied 343 So.2d 1072 (La.1977).[5] Making evaluations of credibility has no place in determining a summary judgment. Dixie Buick, Inc. v. Lockett, 263 So.2d 56 (La.App. 4th Cir.1972). A motion for a summary judgment is not to be used as a substitute for trial on the merits. Oller v. Sharp Elec., Inc., 451 So.2d 1235, 1237 (La.App. 4th Cir.), writ denied 457 So.2d 1194, appeal after remand 514 So.2d 176, writ denied 519 So.2d 117.
Plaintiffs argue that LSA-R.S. 32:900 B(2) requires the Commercial Union policy to contain an omnibus clause that would have provided coverage while Mr. Coburn was driving the vehicle. LSA-R.S. 32:900 B(2) applies only to covered vehicles. Omnibus coverage is not required for vehicles not covered by the policy. Commercial Union contends that the truck Mr. Coburn was driving was not covered by the policy it issued to Hibernia Roofing. Commercial Union does not dispute the fact that the omnibus coverage requirement of LSA-R.S. 32:900(2) would apply to covered vehicles. This Court will assume for purposes of reviewing this summary judgment that if the Commercial Union policy covered the vehicle, that coverage would extend to Mr. Coburn's use of the vehicle at the time of the accident.
Commercial Union initially confirmed coverage. Subsequently it denied coverage. Plaintiffs claim that after having initially confirmed coverage, Commercial Union is prohibited from subsequently denying coverage. Steptore v. Masco Const. Co., Inc., 93-2064, p. 5 (La. 8/18/94), 643 So.2d 1213, 1216.
In Steptore the Supreme Court said:
Accordingly, when an insurer, with knowledge of facts indicating noncoverage under the insurance policy, assumes or continues the insured's defense without obtaining a nonwaiver agreement to reserve its coverage defense, the insurer waives such policy defense.
The trial court in its written reasons rejected plaintiffs' Steptore argument, stating that:
The right to claim that the insurance company's policy coverage defenses were waived is personal to the insured. In Commercial Union's case, a reservation of rights letter was sent.
This Court agrees with the reasoning of the trial court.
The face of the Commercial Union Insurance Business Auto Policy carried by Hibernia Roofing & Metal Works, Inc. indicates that "covered autos" are those described by "symbols 7, 8, 9" of Item Three:
7 = SPECIFICALLY DESCRIBED AUTOS.
Only those autos described in ITEM FOUR for which a premium charge is shown (and for liability coverage any trailers you don't own while attached to any power unit described in ITEM FOUR.)
8 = HIRED AUTOS ONLY.
Only those autos you lease, hire, rent or borrow. This does not include any auto you lease, hire, rent, or borrow from any of your employees or members of their households.
9 = NONOWNED AUTOS ONLY.
Only those autos you do not own, lease, hire or borrow which are used in connection with your business. This includes autos owned by your employees or members of *1332 their households but only while used in your business or your personal affairs.
Police Officer Donald Carey who was one of the two officers who investigated the accident testified that the vehicle driven by Mr. Coburn had boldface letters on both sides of the vehicle identifying it as a Hibernia Roofing truck. Officer Carey testified that Mr. Coburn produced registration papers at the accident scene showing that the vehicle belonged to Hibernia Roofing. However, the license number does not correspond to any vehicle owned by Hibernia Roofing. The other investigating officer, Iris A. McMillon, testified by deposition that Mr. Coburn produced a registration with Hibernia Roofing's name on it. This testimony is consistent with the testimony given by Officer Carey. Officer McMillon testified that there was no writing on the side of the truck. This testimony is inconsistent with that of Officer Carey, as well as the deposition testimony of Allen Jaeger. For purposes of this motion for summary judgment this Court is precluded from resolving this inconsistency. We must view the testimony in the light most favorable to the plaintiffs.
The president of Hibernia Roofing, Patricia M. Dayberry, signed an affidavit stating that Hibernia Roofing "did not own, did not operate, did not lease and did not control the use of a blue Chevrolet pick-up truck operated by Brian R. Coburn which was, upon information and belief, involved in an accident on or about July 19, 1986."
This is inconsistent with the testimony of Officers Carey and McMillon that Mr. Coburn produced registration papers showing that Hibernia Roofing owned the vehicle. This Court must view this inconsistency in the light most favorable to the plaintiffs for the purposes of this motion for summary judgment. Cf. Clark v. Superior Ins. Co., 600 So.2d 150 (La.App. 3 Cir.1992) where the reasoning of the court in denying summary judgment based on a finding that there existed genuine issues of material fact regarding the question of ownership could apply to the instant case although the unresolved facts in Clark are distinguishable. Clark does not stand for the proposition that the question of ownership can never be resolved on a motion for summary judgment.
The license number shown on the registration according to the police report allegedly corresponds to a 1964 truck. No 1964 truck is shown on the schedule of trucks on the Commercial Union Insurance Company policy which was the policy that insured Hibernia Roofing's vehicles. Coverage pursuant to "symbol 7" of the Commercial Union policy is available only to vehicles listed on the schedule of vehicles. Officer Carey testified that the truck Mr. Coburn was driving was a 1985 model. The schedule does show a 1985 truck. The model year of the truck traced through the license and the model year remembered by Officer Carey are inconsistent. This Court must view this inconsistency in the light most favorable to the plaintiffs for purposes of reviewing this motion for summary judgment.
Moreover, coverage may exist under "symbols 8 and 9" even if the vehicle driven by Mr. Coburn was not owned by Hibernia Roofing. Commercial Union contends that at the time of the accident only "symbol 7" was in effect and that "symbols 8 and 9" were only added later by endorsement dated September 12, 1986.
It is true that there is an endorsement adding "symbols 8 and 9" with an effective date of September 12, 1986. However, the face of the policy states that it covers the period from 7-3-86 to 7-3-87 and it shows that covered autos include "symbols 7, 8, 9." We also note that the face of the policy showing coverage under "symbols 8 and 9" is stamped "SEP 9 1986" which is prior to the effective date of the endorsement. In view of the inconsistencies on the face of the record surrounding the effective date of "symbols 8 and 9" a determination of the effective date of "symbols 8 and 9" adverse to the plaintiffs cannot be made on motion for summary judgment.
According to Ms. Dayberry's affidavit an agreement establishing an independent contractual relationship between Hibernia Roofing and Mr. Coburn was executed on July 3, 1986, but he had not commenced any work under the agreement until July 21, 1986, two days after the accident. The affidavit *1333 also states that Hibernia Roofing did provide magnetic vehicle door signs to its independent contractors, but the affidavit fails to mention whether or when such a sign might have been supplied to Mr. Coburn by Hibernia Roofing. The affidavit does not explain why the truck Mr. Coburn was driving might have had Hibernia Roofing signs prior to the date he commenced work for Hibernia Roofing. Summary judgment is not the proper vehicle for resolving these issues of fact.
In view of the foregoing this Court finds that it was error to dismiss plaintiffs' claims against Commercial Union Insurance Company on motion for summary judgment.

V. IT WAS ERROR TO DENY SUMMARY JUDGMENT AS TO STATE FARM FIRE AND CASUALTY COMPANY
State Farm Fire and Casualty sold Allen Jaeger a personal Homeowner's Extra policy and a Personal Liability Umbrella policy.
The written reasons for the trial court's judgment of November 21, 1994 denying State Farm Fire and Casualty's motion for summary judgment state that "if coverage is provided under either State Farm Fire and Casualty's ("State Farm") homeowner's or umbrella policy issued to Allen Jaeger, then State Farm might remain a party if the policy under its terms provides coverage." The trial judge held that LSA-C.C.P. art. 966 D which provides for summary judgment on the issue of insurance coverage applies only to insurers, not to each separate policy issued by an insurer. The trial court took the position that it was not required to decide that insurance did not exist under one policy where the same insurer would remain a party to the suit under another policy. The trial court's approach can be characterized as "in for a penny, in for a pound." Following this reasoning, when the trial judge was unable to give a definitive answer to the question of whether Allen Jaeger's State Farm Fire and Casualty umbrella policy provided coverage, he also refrained from ruling on the question of whether Allen Jaeger's State Farm Fire and Casualty homeowner's policy provided coverage.
LSA-C.C.P. art. 966 A provides that a party "may move for a summary judgment in his favor for all or part of the relief for which he has prayed." LSA-C.C.P. art. 966 A has been interpreted to mean that partial summary judgment may not be used to dispose of alternative theories of recovery. Porche v. Continental Ins. Co., 95-0840, p. 2-3 (La.App. 4 Cir. 5/16/95), 655 So.2d 788, 789. A partial summary judgment must grant all or part of the relief prayed for. Id. A partial summary judgment may not be used to decide an issue. Id. Partial summary judgment is not favored where it will promote piecemeal litigation and discourage judicial efficiency and economy. Id.
In the instant case the relief State Farm Fire and Casualty prayed for was to be dismissed from this suit. A favorable coverage determination on only one policy would not result in State Farm Fire and Casualty obtaining all or part of the relief it prayed for. It would still have to defend based on the other policy. Although its legal arguments concerning the meaning of the policy provisions in the two policies might be different, State Farm Fire and Casualty's trial conduct would remain the same. The witnesses called or cross-examined by State Farm Fire and Casualty should remain the same whether it is defending one or two policies. Id. at 790. The additional burden on Allstate Fire and Casualty to go to trial on two policies instead of one is not material and would cause no prejudice. Id. at 789. This analysis is consistent with the approach taken by the trial court when it refused to dismiss on only one policy because it could not dismiss on the other.
In 1992 paragraph "D" permitting partial summary judgment on the issue of insurance coverage without the necessity of determining liability or damages was added to LSA-C.C.P. art. 966 for the purpose of allowing coverage determinations to be made on one, or some, but arguably not all relevant policies carried by an insurer. A finding of coverage in favor of the plaintiff as permitted by LSA-C.C.P. art. 966 D without a finding of liability or damages, i.e., without granting plaintiff any of the relief prayed for, indicates that, at least where questions of insurance *1334 coverage are concerned, the legislature envisioned situations in which partial summary judgment would be appropriate without granting all or part of the relief prayed for. This indicates a public policy favoring the disposition of coverage questions via summary proceedings. There are no cases on point that resolve these conflicting approaches.
However, it is not necessary to determine whether partial summary judgment is an appropriate vehicle for deciding the coverage of less than all of the policies sued on of a single insurer because this Court finds that neither State Farm Fire and Casualty policy provides coverage for plaintiffs' damages.

Allen Jaeger's State Farm Fire And Casualty Personal Umbrella Liability Policy
Allen Jaeger's State Farm Fire and Casualty personal umbrella policy clearly and unambiguously provides coverage only where Allen Jaeger is "legally obligated to pay damages." Even using the very broad definition of "insured" urged by the plaintiffs to include Sidney Becker, the umbrella policy provides no coverage because it clearly and unambiguously limits its personal liability coverage to claims the insureds are "legally obligated to pay." The facts of this case provide no public policy reason that would justify a refusal of this Court to enforce such clear and unambiguous language.
The co-employee immunity from tort liability provided by the Worker's Compensation law extends to the co-employee's personal insurer. Dauzat v. State Farm Ins. Co., 473 So.2d 920, 922 (La.App. 3 Cir.1985) and Green v. Turner, 437 So.2d 956, 959 (La.App. 2 Cir.1983). See also Tomasich v. U.S. Fidelity & Guar. Co., 415 So.2d 1002 (La.App. 4 Cir.), writ denied 420 So.2d 446 (La.1982).
The bar against recovery from a negligent co-employee who is immune from suit under the Worker's Compensation law is not merely a personal defense to the coemployee. It is a defense of no cause of action based on statutory law which is available to the co-employee's insurer. Green and Tomasich, supra.[6] See also Holmes v. Pottharst, 438 So.2d 622, 624 (La.App. 4 Cir. 1983), writ denied 447 So.2d 1076 (La.1984).
Because we have already determined that Allen Jaeger is immune from personal liability; and because Sidney Becker is also immune from personal liability under LSA-R.S. 23:1032(A)(1)(a) there are no possible "insureds" under Allen Jaeger's personal State Farm Fire and Casualty umbrella policy who might be "legally obligated to pay damages." Therefore, the umbrella policy provides no coverage.
Plaintiffs argue that the uninsured motorist provisions of the umbrella policy provide coverage even where the insured has no personal liability. This may be true generally, but not under the facts of this case.
Allen Jaeger's personal State Farm Fire and Casualty umbrella policy provides coverage to "any person ... while using or holding an automobile ... owned, rented by, or loaned to the named insured, provided that the named insured gave permission for the type of use." This provision is broad enough to include not only vehicles owned by Allen Jaeger, but those which were loaned to him and which were in turn loaned by him to a third party. However, at the time of the accident the van was not on loan to Allen Jaeger, being used by Allen Jaeger, or on loan by Allen Jaeger to a third party. When Sidney Becker was driving his co-workers home in furtherance of the business of his employer, Allen Jaeger Seafood, Inc., the van was in the possession of its owner Allen Jaeger Seafood, Inc. acting through its employee-agent Sidney Becker, and as a matter of law it was not on loan to Allen Jaeger at that time.
*1335 Regardless of how liberally we construe the provisions of the policy in favor of plaintiffs we can find no coverage for this accident. Mr. Jaeger's personal umbrella policy never contemplated coverage for a van which was not owned by Allen Jaeger personally, but was owned instead by the company for which he worked; where the van was used regularly (not "incidentally") by the company for business purposes even though perhaps frequently made available to Mr. Jaeger for his personal use; where at the time of the accident the van was in the possession of and being driven by an employee-agent of the owner in furtherance of the business of the owner; and where neither Allen Jaeger nor any member of his household was a passenger or a driver of the vehicle at the time of the accident.
The trial court reasoned that:
Because Allen Jaeger is immune as an executive officer and or co-employee since such is the only capacity in which he relates to the plaintiff in this suit, he cannot be legally obligated to pay the claim of the plaintiff. [Emphasis added.] On the otherhand, Sidney Becker is not necessarily immune as a co-employee because the determination by this Court that he was in the course and scope of his employment for the Jaeger corporation at the moment of the accident is not binding on the plaintiff insofar as his claim against Becker.
As the trial judge pointed out in the reasons quoted above, Allen Jaeger's only connection to Mr. Leflore was an employment relationship. As plaintiffs stated in their brief, Allen Jaeger, president of Allen Jaeger Seafood, Inc., "instructed" Sidney Becker,[7] an employee of Allen Jaeger Seafood, Inc., to give Mr. Leflore a ride home from work in the company van. At the same time Sidney Becker was giving Mr. Leflore a ride home, he was also giving a ride home to another coworker, Joe Billo, which he did on a regular basis pursuant to instructions from the company president.
Allen Jaeger testified by deposition that on the day of the accident, but prior to the time of the accident, Sidney Becker had driven the van to Allen Jaeger Seafood, Inc.'s West End restaurant presumably for the business purpose of transporting food for the restaurant. Subsequently, Allen Jaeger instructed Sidney Becker to drive Mr. Leflore and Mr. Billo home in that van from Allen Jaeger Seafood, Inc.'s West End restaurant location where they all worked together. Therefore, based on the uncontroverted facts, we conclude that Sidney Becker's business use of the van on behalf of its owner, his employer, Allen Jaeger Seafood, Inc., commenced prior to using it to transport his co-workers home, and that the van had not been on loan to Allen Jaeger for his personal use for some time prior to the ill-fated trip home. But it is irrelevant how long prior to the accident Sidney Becker's use of the van commenced. The operative facts are that at the time of the accident the van was being driven by an agent-employee of the owner on a mission for that owner, Allen Jaeger Seafood, Inc. and was not in the possession of Allen Jaeger. Plaintiffs have offered nothing to contradict these facts.
There is no genuine issue of material fact. Plaintiffs dispute the legal effect of the facts, but not the facts themselves. Argument of counsel and briefs, no matter how artful, are not sufficient to raise a genuine issue of material fact. Despite the presence of disputed facts, summary judgment will be granted as a matter of law if the contested facts present no legal issues. Davenport v. Amax Nickel, Inc., 569 So.2d 23, 27 (La.App. 4th Cir.1990), writ denied 572 So.2d 68 (La.1991).
Plaintiffs argue that since this ride home in the company vehicle was a one-time exception for Mr. Leflore that occurred after working hours, this court is precluded from determining on summary judgment that the trip was employment related.[8] Even if this *1336 were the only time that Mr. Leflore had ever gotten a ride home in the company van, we still come to the inescapable conclusion that as a matter of law the trip was employment related and, therefore, subject to the Worker's Compensation exclusive remedy rule from the perspective of all parties with any conceivable connection to the use of the van at the time of the accident: Mr. Leflore, Allen Jaeger, Allen Jaeger Seafood, Inc., and Sidney Becker. The fact that the trial judge expressed himself not to be bound by a previous determination regarding the employment related nature of Sidney Becker's operation of the vehicle in question, should not have prevented the trial court from granting summary judgment where no genuine issues of material fact existed.

Allen Jaeger's State Farm Fire and Casualty Homeowner's Extra Policy
Plaintiffs also argue that Allen Jaeger's State Farm Fire and Casualty personal Homeowner's Extra policy provides coverage because it included coverage for bodily injury to third persons. However, the policy clearly and unambiguously excludes coverage for "bodily injury arising out of the ownership... [or] use ... of ... a motor vehicle owned or operated by or rented or loaned to any insured." Mr. Jaeger's Homeowner's Extra policy does not cover vehicle liability.
Mr. Jaeger's Homeowner's Extra policy also contains an exclusion for "bodily injury... arising out of business pursuits" which would apply to the facts of this case.
Finally, Mr. Jaeger's Homeowner's Extra policy liability coverage is limited to "damages for which the insured is legally liable." As Mr. Jaeger is not legally liable for plaintiffs' damages, his homeowner's policy provides no coverage for those damages. Allen Jaeger's State Farm Fire and Casualty Homeowner's Extra policy provides no uninsured motorist coverage which would not be contingent upon the liability of an insured.
As this Court finds as a matter of law under the undisputed facts of this case that neither of Allen Jaeger's State Farm Fire and Casualty policies provides any coverage for plaintiffs' damages, State Farm Fire and Casualty is entitled to summary judgment dismissing them from this litigation.

DECREE
For the foregoing reasons the judgment dismissing Allen Jaeger, individually from this suit is affirmed; that portion of the judgment of November 21, 1994 dismissing Commercial Union Insurance Company is reversed and Commercial Union Insurance Company is reinstated as a party to these proceedings; and the judgments denying State Farm Fire and Casualty's motions for summary judgment are reversed as to that denial and judgment is rendered in favor or State Farm Fire and Casualty dismissing it from this suit with prejudice. The case is remanded for further proceedings consistent with this judgment.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] Sidney Becker and his insurer, Liberty Mutual Insurance Company, were both made defendants, but neither is a party to this appeal.
[2] There is a dispute among the parties over whether this Worker's Compensation judgment is final because the judgment determined only that Mr. Leflore was entitled to benefits without fixing the exact amount of those benefits.

Consequently, plaintiffs argue that res judicata does not preclude them from now arguing that this accident did not occur in the course and scope of employment. The resolution of this question is not necessary for the disposition of this case.
[3] Hibernia Roofing has been dismissed from the case. Plaintiffs state that they did not oppose that dismissal because Hibernia Roofing was bankrupt.
[4] The real culprit in this accident may well have been a phantom vehicle that forced Mr. Coburn into the oncoming lane of traffic where he collided with the van. The question of the fault of the phantom vehicle is not before this Court on this appeal.
[5] In this case the trial judge received live testimony. Deposition testimony may be used to support or oppose a motion for summary judgment, but it is not weighed. Depositions may also be given in open court. From these two premises the trial judged reasoned that it was permissible to receive live testimony in court as long as he did not weigh it or make any credibility calls. The testimony was used only to determine if there were any disputed material facts. The trial court made no attempt to resolve any such dispute by way of summary judgment. We find no fault in this reasoning.
[6] Johnson v. Fireman's Fund Ins. Co., 425 So.2d 224 (La.1982) and Ducote v. Albert, 521 So.2d 399 (La.1988) are inapposite. In Ducote the injured worker was suing a doctor. The court determined that the doctor was not a co-worker. Because the Ducote court found that the Worker's Compensation law provided no tort immunity for the doctor, the doctor's insurer had no immunity either. In Johnson the court was dealing with the employer's uninsured motorist coverage for the tortious acts of a third party independent of any liability on the part of the employer. The Johnson court ruled that the employer's tort immunity did not extend to uninsured motorist coverage for third party liability.
[7] Mr. Becker has already been dismissed with prejudice by judgments dated February 19, 1992 and August 11, 1992.
[8] Plaintiffs' acknowledge in their brief that "Joe Billo always got a ride home with Mr. Becker." Plaintiffs annexed Mr. Jaeger's deposition to their brief. They do not contest Mr. Jaeger's testimony that he instructed Sidney Becker to give Mr. Billo a ride home on a regular basis, including the night of the accident. Therefore, from Mr. Becker's perspective plaintiffs "exceptional event exception" to the course and scope rule would have no applicability even if this Court were to recognize such an exception, which it does not.