I2DALEY, Judge.
This is an appeal taken by the plaintiff in a personal injury suit from the granting of a summary judgment in favor of the defendants, Sheriff Harry Lee and Deputy Joseph Langlois.

FACTS

On July 11,1990, plaintiff, Richard McCar-ter, was stopped at a red light on eastbound U.S. Highway 90 when he was struck in the rear by a car driven by the defendant, Donald J. Parker, Jr. Mr. McCarter’s wife, Betty Jo McCarter, and her minor children, Michael and Dyana Comeaux, were guest passengers in the car at the time of the accident. Plaintiffs allege that Deputy Joseph Langlois was in the course and scope of his employment for the Jefferson Parish Sheriffs Office and was in pursuit of the defendant, Parker, at the time of the accident. The Sheriffs Office and Deputy Lan-glois deny that a chase was in progress at the time of the accident. Afterjjthe case had been pending for several years and discovery conducted, the Sheriffs Office moved for summary judgment.
In their Motion for Summary Judgment, the Sheriffs Office and Deputy Langlois claimed that two eye witnesses to the accident testified that the police car was one hundred yards behind the Parker vehicle when it struck the McCarter vehicle. The defendants also point out that the State Trooper who investigated the accident testified that there were no witnesses at the scene who told him that the police car had its lights on. Defendants then argued that the testimony reveals that the accident was not caused by any such chase and they are entitled to judgment as a matter of law. They also argue that there can be no finding of fault under duty-risk analysis. The motion was accompanied by portions of deposition testimony from Melvin Hebert, Dennis Ze-ringue, Jr., Officer Joseph Langlois, Richard McCarter, Robert G. Vittitoe, and the police report.
In the Motion in Opposition for Summary Judgment, plaintiffs argue that there is a dispute as to whether there was a chase or pursuit taking place by Deputy Langlois of Donald Parker, Jr. at the time of the accident. Attached to plaintiffs’ Memorandum in Opposition were the complete depositions of Officer Langlois, Donald Parker, Jr., Melvin Hebert, and Dennis Zeringue. Plaintiffs argue that based on the deposition testimony, there are numerous questions óf both fact and law which prevent the granting of the Motion for Summary Judgment.
The summary judgment was granted, without reasons being given by the trial court.
The parties designated a record on appeal which contains the original petition, answers, defendant’s motion and memorandum and *1086 plaintiffs opposition and memorandum, as well as all exhibits listed above. On appeal, plaintiffs argue that the 14 trial court erred in granting the Motion for Summary Judgment because there are questions as to whether there was a chase, whether Langlois’ actions were a cause in fact of the accident, and the Sheriffs duty. Defendants respond by arguing whether there was a chase is not a material fact and plaintiff simply failed to meet their burden of defeating the summary judgment. Without conceding that there was a chase, defendants argue that even if there was a chase, the testimony does not show that Langlois did anything improper. Finally, they argue that under duty-risk analysis, there is nothing to show liability on the part of Langlois and the Sheriffs office for this accident.

ANALYSIS

Louisiana Code of Civil Procedure Article 966 provides, in pertinent part, that a Motion for Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. In 1996, the legislature added the following subsections:
The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966A(2).
After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted against an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial. LSA-C.C.P. art. 966C.
|5Pespite the presence of disputed facts, a summary judgment will be granted as a matter of law if contested facts present no legal issues. Leflore v. Coburn, 95-0690 (La.App. 4th Cir. 12/28/95), 665 So.2d 1323.
It is well settled in our jurisprudence that appellate courts review summary judgments de novo, using same criteria applied by trial courts to determine whether summary judgment is appropriate. Rapp v. City of New Orleans, 95-1638 (La.App. 4th Cir. 9/18/96), 681 So.2d 433; La. C.C.P. Art. 966 B.
Deputy Langlois explained that he responded to a call describing an unspecified disturbance on Jacqueline Street in the Avondale section of Jefferson Parish. As he stepped out of his car, he was told by two women that the person who had caused the disturbance had just driven up the street in a gray car and that this individual had been drinking. It was later determined that this individual was Donald Parker, Jr. Deputy Langlois turned around in the driveway and proceeded to exit the neighborhood. As he reached the traffic light at the intersection of Jamie and Highway 90, Deputy Langlois spotted a gray car headed eastbound in the left lane. The patrol ear entered Highway 90, following the gray car through heavy traffic. It was Deputy Langlois’ intention to get close enough to the gray car to view the driver and if he matched the description given by the two women, to stop the suspect. As Mr. Parker, driving the gray car, proceeded down the highway, picking up speed, Deputy Langlois saw Parker’s car strike the curve twice. As Mr. Parker approached the intersection of Lapalco Boulevard, Deputy Langlois saw Mr. Parker’s car strike the rear end of a small ear that was stopped at a red light. At the time of the impact, according to Deputy Langlois, his car was approximately three car lengths or fifty to sixty feet behind Parker’s car and prior to the impact, the patrol car’s lights and sirens were not activated. As soon as Deputy Langlois saw the impact, he put the overhead flights on and radioed for help. Deputy Langlois did not see Parker’s brake lights before the impact. When Deputy Langlois approached Mr. Parker’s car, he noted that Mr. Parker smelled like alcohol. The accident was investigated *1087 by the State Police and Deputy Langlois’ role was limited to directing traffic.
Donald Parker, Jr. testified that he was living with his ex-wife and her parents on Jacqueline Street at the time of this accident. He went for a ride with a friend that afternoon. They purchased a twelve pack of beer and Mr. Parker consumed six beers in about forty-five minutes. He then went back to the residence on Jacqueline Street. As he pulled into the driveway he bumped into his mother-in-law’s station wagon. His sister-in-law waved at him to leave, so he headed out of the subdivision. On his was out of the subdivision, he noticed a patrol ear. As Mr. Parker entered Highway 90, he saw the patrol car in his rear view mirror. According to Parker’s testimony there were eight to twelve cars between his car and the patrol car. The lights and sirens on the patrol car were not activated. Mr. Parker had a feeling the patrol car was following him. Mr. Parker was not “running from the cop,” he was just “going to take a ride down the highway.” When he was about a quarter of a mile ahead of the patrol car, driving about seventy-five miles per hour, he saw the overhead lights of the patrol car illuminated. Mr. Parker testified “by the time he put his lights on, it was a little late to pull me over because by then the accident happened.” He further testified as to how the accident occurred: “I was going down the highway, and I went to put a cassette in my cassette player and it kicked back out, and when it did, I went to reach down for it, and by then I looked back up, and I was going straight for the back of this car ...” He was charged with and pled guilty to DWI in connection with this accident.
|7Mr. Melvin Hebert testified that he was about to enter Highway 90 from Lapalco Boulevard when he saw a police car coming from the left. Mr. Hebert explained that he did not pull onto the highway because “I seen a police car coming with the fights on chasing this — this car.” The car hit another car in the back. The accident took place in the left lane of travel and there were no cars in the right lane which would have prevented Mr. Parker from going around the McCarter vehicle. The patrol car was about one hundred yards behind the Parker vehicle at the time of impact. Mr. Hebert later clarified that he did not know if the police car was chasing the other car. He explained that all of this took place in a matter of seconds.
Mr. Dennis Zeringue, Jr. testified that he was on Lapalco Boulevard going toward Avondale at the time of the accident. As he approached the intersection of Highway 90, he saw the McCarter vehicle stopped at a red light. There was a Cutlass coming very fast with a patrol car behind it. The Cutlass struck the rear of the McCarter vehicle. The patrol ear was approximately one hundred yards behind the Parker vehicle at the time of the impact and Mr. Zeringue “believes the policeman had his fights on.” Mr. Zeringue noted that there were no ears in the right-hand lane and Mr. Parker could have gone around the McCarter vehicle.
Mr. Richard McCarter testified that he does not remember the events prior to the accident very well. He remembers hearing a siren then feeling the impact. It all happened “not within seconds, but one second.”
The State Trooper who investigated the accident, Robert Vittitoe, testified that at the accident scene, Deputy Langlois told him that the fights and siren of the patrol car were not on prior to the accident and that he was not in the “pursuit mode.” None of the witnesses interviewed by Trooper Vittitoe at the scene reported that the fights or siren were activated on the patrol car prior to the accident.
| gApplying the law regarding summary judgment to the facts of the ease before us, we hold that whether or not Deputy Langlois was in pursuit of Mr. Parker at the time of this accident is not a material fact. The testimony is clear that the accident occurred when Mr. Parker, driving under the influence of alcohol and at an excessive rate of speed, looked down to get a cassette and struck the plaintiffs vehicle. It is also clear that Mr. Parker could have easily avoided striking the McCarter vehicle, as there were no cars in the right lane of travel. Mr. Parker did not testify that he left the neighborhood because the police were chasing him; rather, he did not go back.to his mother-in-law’s house because his sister-in-law “waved him on.” *1088 He was driving down Highway 90 “to see if the cop was going to stop me.” It is also clear that whether or not Deputy Langlois was in pursuit of Mr. Parker, Deputy Lan-glois’ actions were reasonable and he did nothing to cause this accident.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.