1DUFRESNE, Judge.
This is an appeal by Louisiana Power and Light Company, defendant-appellant, from an adverse jury verdict of $225,000, for damages suffered by Jay Ryals, plaintiff-appellee, when his van was rear-ended by an LP & L truck at a red light. Two assignments of error are urged as follows: 1) the award for past and future lost wages of $141,000, was not supported by the evidence, and 2) the award of $30,000, for future medical expenses was similarly not supported by the evidence. Because we find neither manifest error in the jury’s factual findings nor any abuse of its much discretion in fixing the amount of the award, we reject both assignments and affirm the jury verdict.
The facts of the accident are not disputed. On the morning of August 24, 1987, Ryals was stopped in his delivery van at a red light frwhen it was struck from behind by an LP & L truck. The impact pushed the van about ten feet into the intersection where it came to rest without furthér mishap. At the close of the evidence, LP & L acquiesced in plaintiffs motion for a directed verdict on the issue of liability, thus leaving only the question of damages for the jury.
The evidence relating to the two items of damages contested by LP & L is more complex. Immediately after the accident, Ryals got out of his vehicle and went to a nearby pay-phone to report the incident. A short while later, the ambulance crew arrived and decided to take Ryals to the West Jefferson Hospital emergency room for X-rays. These proved negative and he was released that same day. However, he testified that he did not sleep well that night and woke up the next morning suffering pains in his neck, *1066 back and legs. On the third day'he went to see Dr. Arthur Kleinschmidt, an orthopedic surgeon, to whom he had been referred by the emergency room staff. This doctor testified that Ryals was complaining mostly of neck pains on this visit, but that X-rays showed no obvious bone problems. His original diagnosis was a soft tissue neck injury, and he recommended bed rest, heat pads and prescription pain pills. It was his further opinion that Ryals was disabled from work at that time. Two days later, Ryals returned complaining of increased neck pain as well as back pain radiating into his left buttocks, thigh and leg, and of headaches. The doctor’s opinion was that the back pain was also the result of the accident. He sent Ryals home with stronger pain pills and instructions for continued bed rest and heat treatment. As of a September 4, visit |sthe pain was ongoing, so the doctor decided to put him in the hospital for further tests.
On September 9, Ryals was admitted to West Jefferson Hospital where he was placed on strict bed rest with traction and heat treatments, and muscle relaxants and analgesics were prescribed. X-rays and a C.T. scan were normal, except for what appeared to be a non-encroaching bulge at the L3-4 level of the spine. Also during this stay, Dr. Thor Borresen, a neurologist, was consulted about the continuing headaches, and a brain scan was performed, but proved negative. After five days, Ryals was sent home on continuing bed rest, heat treatments, and muscle relaxants and analgesic medication. He was also prescribed pain medication for headaches.
On September 22, Ryals returned to Dr. Kleinschmidt with basically the same symptoms and the doctor referred him to Dr. Borresen for further treatment. This latter doctor saw-him twice in early October, and because of continuing symptoms of pain in the neck and back, he ordered further tests. Dr. Carl Culicchia, a neurosurgeon, did a myelogram and C.T. scan on October 19, and reported no abnormalities that he could associate with the patient’s symptoms. Dr. Bor-resen saw Ryals once more in October and once in early December. On this last visit the doctor concluded that from a neurological point of view there was no reason Ryals could not return to work. However, he referred him back to Dr. Kleinschmidt to whose opinion he deferred in regard to possible orthopedic problems.
|4By then, Ryals had begun treatment with Dr. Bernard Manale, an orthopedic specialist. This doctor first saw the patient on November 10, 1987, for complaints of pain in the lower back. X-ray studies were negative, and he diagnosed Ryals as having a sprain in the lumbar region which continued to be disabling for work. He prescribed a back corset and physical therapy. At a third visit of January 13, 1988, the patient continued to complain of pain, and in addition stated that his left leg would occasionally give out on him. The doctor prescribed muscle relaxants and recommended a discogram. Three visits later, on March 8, Ryals’ symptoms had not improved and an MRI test was ordered. Dr. Aprill did this test on March 12, and found evidence of a fissure or tear in the L4-5 disc. Dr. Manale stated that the only way to correct such a problem would be by a fusion operation, and that such a procedure would presently cost $15,000 to $20,000 for the hospital and would require two surgeons whose “fees would be between $5,000 and $6,000.” He also said, however, that he would only recommend such surgery for a fissure where the patient had not responded to conservative treatment and was experiencing severe pain. He did not believe that Ryals’ situation warranted surgery at that time, but stated that in the event his condition were not to improve, or at least stabilize, over the next few years, then surgery would indeed be a possibility.
Subsequent to Dr. Aprill’s MRI, Dr. Ma-nale saw Ryals in August and September of 1988, for continuing back pain and a bone scan was done on the latter date but proved negative. At a later visit of March | s29,1989, he reported to the doctor that he was doing better and felt sore from time to time, but was not experiencing real pain. Dr. Manale discharged him at this point. However, in December of the year Ryals returned stating that several weeks before he had taken a job in an automotive shop, but the physical exertion of that work had caused his back pain to flare up. The next visit to Dr. Manale was in *1067 September of 1990, and at that time he reported still being in pain with “pins and needles” in his back. The doctor again recommended that another discogram be done. He was also of the opinion that Ryals continuing back problems were all traceable to the accident of 1987.
A month or so after this visit to Dr. Ma-nale, Ryals saw Dr. Henry Larocca, another orthopedist. This doctor died shortly thereafter and the treatment was taken over by Dr. Charles Billings, Dr. Larocca’s partner and an orthopedic surgeon. Dr. Billings testified that Dr. Larocca had taken X-rays and done an examination of the patient and diagnosed a lumbar disc protrusion and degenerative disc disease with a poor prognosis for a spontaneous recovery. On April 12, 1991, Dr. William Schwartz, a radiologist, did several tests at Dr. Laroeca’s request. He testified that a discogram revealed an irregularity known as a Schmorl’s node at the L3^f level, and a fissure in the disc at the L4-5 level. He also noted that during the discogram when he stuck the dye needle into the discs at the above levels, Ryals complained of pain similar to that which he had been suffering since the accident. The doctor further reported that when he injected those two spots with anesthetic the pain was reduced.
I (¡Doctor Billings continued to see the patient between the April, 1991, discogram and the trial in February, 1993. On most of these visits Ryals continued to report pain in his back and occasional weakness in his leg. Dr. Billings’ opinion was that the fissure in the disc L4-5 disc was the result of the accident, and that the pain associated with the Schmorl’s node was also probably related to the accident. He stated that usually injuries of the sort found here resolve themselves within one to two years at most. However, he further stated that if symptoms continue after two years, then the prognosis for recovery becomes less likely. He said that typically patients will have good and bad days, and the symptoms are often related to physical exertion. It was his opinion that if the pain persisted and if the source of that pain could be specifically identified, then surgery would be an option to be considered. He further indicated that even if surgery were done, Ryals would still have to restrict his activities and avoid heavy lifting, prolonged sitting or standing, or repetitive stooping or bending.
Ryals testified that he has a ninth-grade education and that he was 24 years old at the time of the accident. He said that when he quit school he began to work at various construction jobs doing heavy labor. At the time of the accident he was working as a delivery man for a paper company and was required to handle 50 to 60 pound packages. His weekly salary was $300.00, plus $40.00 in commissions, or about $8.50 per hour. Although Ryals’ testimony about the jobs he had from the time of the accident to the time of trial |7was somewhat imprecise, several pertinent facts emerged. He said that after the accident he was unable to work for a year and one-half to two years, but was not sure of exactly when he did return to work. Dr. Manale testified, however, that he considered Ryals disabled until March, 1989, the date he discharged him, which was some 19 months after the injury. Ryals also testified that he had held several jobs from the time he returned to work until trial and that most of these were with auto parts stores paying $6.25 to $6.50 per hour. He also said that he had one job paying $8.00 per hour at an automobile and diesel repair shop, but that this work was too strenuous for his back and he had to quit it after a few weeks. Dr. Manale verified that Ryals had come to him with complaints of a flare-up in his back because of his few weeks work in an automobile shop in December of 1989. At the time of trial, Ryals was again employed at an Auto-Zone parts store. Ryals finally said that his back condition seemed to him to be getting worse over time, and that he would consider having surgery if the problems continued and his doctor recommended it.
On the basis of the above evidence the jury awarded Ryals $30,000, for future medical expenses and $141,000, for past and future lost wages. LP & L appeals both awards and argues that the evidence was insufficient to support either item of damages.
As to the future medical expenses, LP & L does not contest the amount awarded, and indeed could not reasonably have *1068 done so given the testimony of Dr. Manale as to this figure. Instead, the question it I «raises is the purely factual one of whether Ryals will, more probably than not, need future surgery, as the jury obviously found. In reviewing such factual issues, the role of appellate courts is extremely limited. We are permitted to disturb factual findings of the trier of fact only if they are manifestly erroneous, Rosell v. Esco, 549 So.2d 840 (La.1989). Even if an appellate court feels that had it been sitting as the original trier of fact it would have made different credibility determinations, evaluated the evidence differently and made different factual inferences, it may not substitute its views for those of the factfinder unless those latter views are clearly wrong, Id. Further, where there are two permissible views of the evidence, the factfin-der’s choice between them cannot be manifestly erroneous, Id.
In the present case, two of Ryals treating physicians testified that surgery was a possibility in the event that Ryals condition became worse. Dr. Billings said that the type of injuries at issue here generally resolve themselves within a year or two, but if they persists for a longer time then they will probably not be resolved through the normal healing process. He was clear that surgery would be a possibility if Ryals’ condition worsened and if the exact location of the problem could be identified. Ryals testified that he thought his condition had worsened over the years, and that he would consider surgery if it were recommended by his doctors in the future. Given this testimony, there is clearly a permissible view of the overall evidence which would support the jury’s factual finding that Ryals will, more probably than not, need surgery to correct the ongoing problem in his back.
iflAs to the $141,000.00, figure for lost wages, the first inquiry here is again whether there is a permissible view of the evidence which would support the jury’s factual finding that Ryals lost both past and future wages because of his injury. It is evident that there was some loss of past wages and there was ample evidence to support a finding that Ryals was out of work for 18 or 19 months because of the injury. At his $340.00 per week pre-accident salary, this loss would have amounted to about $25,000.00, leaving some $116,000.00, as the amount awarded for future lost wages. LP & L urges that there was no showing that Ryals’ future earning capacity was diminished by the injury, and therefore that this portion of the award must be set aside. We disagree.
A claim for lost future wages, as any other claim, need only be shown by a preponderance of the evidence, Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971). And such a claim may be established simply by the testimony of the plaintiff, if it is believed by the trier of fact, Partner v. Anderson, 513 So.2d 471 (La.App. 2nd Cir.1987). In the present ease, the uncontested evidence was that Ryals was earning about $8.50 per hour as a delivery man for a paper products distributor. After the accident, he testified that he worked for an automobile parts outlet at $6.25 to $6.50 per hour, but found a better paying job with a diesel repair shop for $8.00 per hour. After a few weeks, however, he found that the work was too strenuous and caused his back pains to flare up, and he therefore had to give up this job and return to the parts store at a lesser wage. As to his physical I mlimitations, Dr. Billings testified that he should avoid heavy work or other jobs which required repetitive bending, stooping or prolonged sitting or standing. He also said that even with surgery, these restrictions would remain. It was also uncontested that Ryals has only a ninth-grade education. Considering all of this evidence, we find no manifest error in the jury finding as a matter of fact that Ryals wage-earning capacity has been diminished because of the accident.
The next question here is whether the jury erred in making the award for this item of damages that it did. The standard of review applicable to this question is whether the jury abused its much discretion in fixing the amount for this portion of plaintiffs damages, Jordan v. Travelers Insurance Co., supra. Further, future lost wages need not be established to a mathematical certainty, and may be shown by any proof which reasonably establishes a figure, including the testimony of the injured party, Partner v. Anderson, *1069 supra. The evidence here is that Ryals is earning some $2.00 per hour less than he was before he was injured, and his one attempt to hold down a job at a salary comparable to his pre-accident wage ended in failure because of his back condition. It was further shown that he was only 24 years old at the time of the injury. The jury did not indicate how it arrived at the amount of the award, but it can be calculated that if Ryals’ were to work 40 hours per week for 41 years at two dollars less per hour than he made before the accident, the amount of lost wages would be $170,560.00 (40 hours x 52 weeks x 41 years x $2.00 per hour = $170,560). The jury in fact awarded only $116,000.00, for this In element of damages. In light of all of the facts of the ease, we are unable to say that this figure represents an abuse of the trier of facts’ much discretion in fixing damages, and we therefore must affirm that award.
For the foregoing reasons, we affirm the verdict of the jury awarding plaintiff a total of $225,000.00, in damages for the injuries he suffered in the accident.

AFFIRMED