697 So.2d 327 (1997)
Anita RIVERA, et al.
v.
UNITED GAS PIPELINE COMPANY, et al.
Dr. Abdo A. HUSSEINEY, et al.
v.
UNITED GAS PIPELINE COMPANY and Woodson Construction Company, Inc.
Nos. 96-CA-502, 96-CA-503 and 97-CA-161.
Court of Appeal of Louisiana, Fifth Circuit.
June 30, 1997.
*331 Daniel E. Becnel, Jr., Darryl J. Becnel, Becnel, Landry & Becnel, Reserve, W. Hugh Sibley, Sibley Law Firm, Greensburg, Calvin Fayard, Jr., Fayard & Honeycutt, Denham Springs, Ray F. Amedee, Jr., LaPlace, for Plaintiffs-Appellants Anita Rivera, et al., and for Plaintiffs-Appellees/Cross-Appellants Dr. Abdo Husseiney, et al.
Terrence K. Knister, H. Philip Radecker, Jr., Anne P. Birdsong, Abbott, Simses, Album & Knister, New Orleans, for Defendant-Appellee and for Defendant-Appellant Woodson Construction Company.
James H. Roussel, Mark C. Dodart, Neil C. Abramson, Rebecca Y. Cooper, Phelps Dunbar, L.L.P., New Orleans, for Defendant-Appellee and for Defendant-Appellant/Cross-Appellee United Gas Pipeline Company.
Before GRISBAUM, DUFRESNE and WICKER, JJ.
GRISBAUM, Judge.
This consolidated appeal arises out of two separate accidents in which natural gas was released into the atmosphere. Separate trials were held for each incident, and the matters have now been consolidated on appeal. Both sides allege several assignments of error as to each appeal.

*332 ISSUES

We are called upon to determine a number of issues, to-wit:
(1) Whether the trial court erred in awarding punitive damages;

96-CA-502 Consolidated With No. 96-CA-503
(2) Whether the jury verdict was internally inconsistent;
(3) Whether the jury's compensatory damage awards were improperly low
(4) Whether the jury erred in failing to award damages to 17 of the bellwether plaintiffs;
(5) Whether the trial court erred in allowing the defendants to choose 12 of the 24 bellwether plaintiffs;

97-CA-161
(6) Whether the trial court erred in finding United Gas vicariously liable for the negligence of On and Offshore Inspection Services; and
(7) Whether the trial court erred in awarding special damages to two of the bellwether plaintiffs.

FACTS AND PROCEDURAL HISTORY
During the course of a construction project in St. John the Baptist Parish, there were three notable accidents involving the release of natural gas. On October 24, 1991, the old 18-inch gas main disconnected in close proximity to a school and subdivision, resulting in a natural gas leak. On January 2, 1992, a fractionation ("frack") tank used to store materials extracted from the gas pipeline exploded. On January 24, 1992, a two-inch pipe attached to the new 24-inch gas main broke, resulting in an uncontrolled natural gas release.
As a result of these accidents, numerous lawsuits were filed, alleging damages as a result of the three incidents. All suits were consolidated for discovery purposes and transferred to the Fortieth Judicial District Court. Claims arising out of the October 24, 1991 incident were consolidated for trial into Civil Action No. 28738, Rivera, et al. v. United States Gas Pipeline. Claims arising out of the January 2, 1992 explosion were consolidated into Civil Action No. 29008, Becnel, et al. v. United Gas Pipeline. All claims arising out of the January 24, 1992 pipeline rupture were consolidated into Civil Action No. 29089, Husseiny, et al. v. United Gas Pipeline. The Becnel matter was tried before a judge and settled post trial, prejudgment.

RIVERA, ET AL. V. UNITED GAS PIPELINE, ET AL.
The incident at issue arose out of a release of natural gas from an existing pipeline belonging to United Gas Pipeline ("United") during the construction of a new, empty natural gas pipeline by Woodson Construction Company ("Woodson") in LaPlace, Louisiana, on October 24, 1991. More specifically, United contracted with Woodson for the construction of a new 24-inch pipeline to replace the existing 16-inch and 18-inch pipelines that extended from New Orleans to Baton Rouge. The new pipeline was being constructed along the same right-of-way as, and from ten to 25 feet away from and parallel to, the existing pipeline. The existing pipeline was left active during the construction of the new pipeline.
On October 24, 1991, Woodson employees were working in the vicinity of the existing 18-inch pipeline when the soil around the pipeline shifted, causing a buried pipeline coupling to disengage. As a result, natural gas was spewed into the atmosphere. The school immediately adjacent to the rupture was evacuated as was the nearby Belle Pointe Subdivision. Also, due to the risk of ignition, many area roads were closed, and all vehicles were required to shut off their engines. The rupture lasted approximately one hour, while the evacuation remained in effect for several hours thereafter.
A petition for damages and class action was filed on October 29, 1991 against both United and Woodson. The plaintiffs requested that the court certify the matter as a class action to which Woodson filed an exception, which was granted. This Court reversed the trial court and ordered the matter be tried as a class action. Nine thousand eight hundred thirty-nine plaintiffs filed proofs of claim.
*333 Thereafter, counsel for both parties selected 60 plaintiffs to depose. The trial court then ordered that 24 of the class members were to be selected to act as bellwether plaintiffs. Twelve were to be picked by the plaintiffs and 12 were to be picked by the defendants.
A jury trial was held from May 23 to June 7, 1995. The jury found that the defendants, United and Woodson, were both negligent and allocated fault 50 percent to each defendant. The jury awarded compensatory damages ranging from $500.00 to $3,000.00 to five of the 22 bellwether plaintiffs. Two bellwether plaintiffs were dismissed by directed verdict due to their failure to appear at trial. Further, the jury found no injuries or damages were caused by the storage, handling, or transportation of hazardous or toxic substances; hence, no exemplary damages were awarded.
Plaintiffs filed a Motion for New Trial or, alternatively, for Judgment Notwithstanding the Verdict. The trial court entered a judgment granting plaintiffs' Motion for Judgment Notwithstanding the Verdict, clarifying the jury's verdict by finding that the defendants' negligence was the proximate cause of the injuries to five bellwether plaintiffs but denied plaintiffs' Motion for New Trial.
It is from this judgment that the plaintiffs now appeal in appeal No. 96-CA-502 consolidated with No. 96-CA-503.

HUSSEINY, ET AL. V. UNITED GAS PIPELINE, ET AL.
On January 24, 1992, Mr. Duane Gremillion, an employee of Woodson, was backfilling earth over a newly installed 24-inch natural gas pipeline in close proximity to the intersection of Highway 61 and Ormond Boulevard in LaPlace, Louisiana. The pipeline section contained a large stopple fitting with a two-inch tap connection on each side of the stopple fitting. The tap connection assembly included a short section of two-inch pipe with a nipple top, which protruded upward out of the 24-inch pipeline.
Mr. Gremillion had spread two loads of river sand covering the gas pipe and the fittings without incident and, while in the process of spreading an additional third load of sand, his bucket hit and severed one of the two-inch pipe connections. This event occurred shortly after 11:00 a.m. when, upon opening his bucket to drop additional sand onto the area, the bucket pushed below the sand surface, striking the two-inch pipe and severing it from the gas main, resulting in an uncontrollable release of natural gas.
Within minutes of the accident, the Civil Defense had set up a command post in the area. Due to the potential danger of gas ignition, businesses along Airline Highway, from Ormond Boulevard to Pelican Savings, were evacuated. U.S. Highway 61 was closed, except for emergency traffic. The pipeline continued to emit natural gas until 2:20 p.m. when the broken fitting was plugged.
On January 24, 1992, plaintiffs filed a Petition for Damages and Class Action against United and Woodson. Plaintiffs requested certification as a class action, and Woodson filed an exception to the certification, which was denied by the trial court. Seven thousand eight hundred fifty-eight persons filed proofs of claim in this matter.
Again, 24 bellwether plaintiffs were selected to testify at trial, with 12 being selected by the plaintiffs and 12 being selected by the defendants. A bench trial in this matter was begun on June 26, 1995 and concluded on July 29, 1995. On September 26, 1995, the trial court rendered judgment, finding Woodson 75 percent at fault for causing the incident and resulting injuries, due to the negligence of the backhoe operator (Gremillion) and the Woodson foreman. The trial court also found the On and Offshore Inspection Services representative present at the construction site to be 25 percent at fault. The trial court imputed the negligence of On and Offshore to United, stating that On and Offshore was an agent of United at the time of the accident.
The court awarded compensatory damages ranging from $100.00 to $3,000.00 to 16 of the 24 bellwether plaintiffs and awarded special damages to three of the plaintiffs. Punitive damages were also awarded, and the lower court matched each plaintiff's compensatory damage award with an identical award for *334 punitive damages. By amended judgment dated September 28, 1995, the trial court corrected an error in the amount of compensatory and punitive damages awarded to one bellwether plaintiff and reduced that plaintiff's award by $150.00.
It is from this judgment that the defendants now appeal in appeal No. 97-CA-161.
These cases have been consolidated for appeal.

STANDARD OF REVIEW
As always, we must be ever mindful that, in reviewing factual issues, our role is extremely limited in that we are permitted to disturb the factual findings of the trier of fact only when they are manifestly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989); Ryals v. La. Power & Light Co., 94-0050 (La.App. 5th Cir. 4/26/94), 636 So.2d 1064.

ISSUE ONE

LAW
As the trial judge stated during the trial, this litigation is about punitive damages. The issue of punitive damages is common to both cases and, as such, will be addressed at the outset.
While the purpose of ordinary damages is to compensate the victim, the purpose of punitive damages is to punish and deter wrongdoers. Such damages are given to the plaintiff over and above full compensation for his injuries, for the purpose of punishing the defendant, of teaching the defendant not to do it again, and of deterring others from following the defendant's example. Billiot v. B.P. Oil Co., 93-1118 (La.9/29/94), 645 So.2d 604.
Accordingly, in punitive damage awards, the emphasis is not on the plaintiff and his hurt but on the defendant and his conduct. It is not so much the particular tort committed as the defendant's motives and conduct in committing it, which will be important as the basis of the award. Thus, punitive damages have more to do with the tortfeasor than with the victim and are regarded as a fine or a penalty for the protection of the public interest. Billiot, supra, at 613.
La. Civil Code art. 2315.3 (Repealed by Acts 1996, 1st Ex.Sess., No. 2, § 1, eff. April 15, 1996) provided:
In addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances. As used in this Article, the term hazardous or toxic substances shall not include electricity.
The Louisiana Supreme Court has concluded that the purpose of Article 2315.3 is threefold: (1) to penalize and punish defendants for engaging in wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances that cause injury to others; (2) to deter the tortfeasors and others who might follow their example from exposing the public to dangers of that kind in the future; and (3) to provide victims injured by such conduct with the incentive to act as the prosecutors of penal laws against such wrongdoers. Billiot, supra, at 613.
In order to obtain an award of exemplary or punitive damages, the plaintiff first must prove the defendant's conduct was wanton or reckless. The "wanton" or "reckless" conduct that must be proved is highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent. Second, the plaintiff must show that the danger created by the defendant's wanton or reckless conduct threatened or endangered the public safety. Third, the statute requires proof that the defendant's wanton or reckless conduct occurred in the storage, handling, or transportation of hazardous or toxic substances. Finally, the plaintiff is required to prove that his or her injury was caused by the defendant's wanton or reckless conduct consisting of all of these elements. Id. at 613.

Burden of Proof
Before inquiring into any of these elements, we must first determine the proper burden of proof by which these elements *335 must be shown. Plaintiffs allege the proper burden is the usual "preponderance of evidence" standard. The defendants, however, contend that a more onerous "clear and convincing" standard is called for.
The defendants rely on the Billiot court's statement that "Article 2315.3 itself, by its narrow authorization of punitive damages awards under special circumstances, imposes a more onerous proof requirement than plaintiffs face in ordinary negligence cases." Id. at 613. We feel defendants' reading of this statement is inaccurate.
The "more onerous" statement by the Billiot court directly precedes the court's listing of the four elements required to recover damages under Article 2315.3. When read in context, the Billiot court is obviously referring to the fact that punitive damages may only be recovered when these four elements are met and is not attempting to create a higher standard of evidentiary proof. The Billiot court says nothing of creating a "clear and convincing" burden of proof, and this Court is not prepared to create one from such an innocuous statement.
Additionally, the issue of the proper burden of proof in punitive damages cases has been directly addressed by Louisiana courts, and all courts have concluded that the proper burden is "preponderance of evidence." See, Galjour v. Gen. Am. Tank Car Corp., 764 F.Supp. 1093 (E.D.La.1991). This is in accordance with the general rule in civil cases that a party having the burden of proof must establish its case by a preponderance of the evidence. Guggenheim v. Parish of Jefferson, 613 So.2d 636 (La.App. 5th Cir. 1992). Ergo, until the Louisiana legislature takes direct action, the burden of proof for exemplary damages is by a preponderance of the evidence.

Hazardous or Toxic Substance
The next issue is whether natural gas is a hazardous or toxic substance as contemplated by the statute. The Louisiana legislature did not define "hazardous or toxic substances" when it enacted Article 2315.3. The only jurisprudence this Court has been able to find on the matter is Bouy v. Transcontinental Gas Pipe Line Corp., 645 F.Supp. 109 (M.D.La.1986) in which a federal court concluded that natural gas is a hazardous substance, allowing the recovery of punitive damages.
However, more important, in a previous writ on this matter entitled Rivera v. United Gas Pipeline Co., Inc., No. 95-C-400, this Court stated, "Clearly, natural gas is a hazardous or toxic substance encompassed by LSAC.C. art. 2315.3." As this statement was made in a writ disposition concerning the very matter now before us, it is the law of the case and will not be altered on appeal.

Wanton and Reckless Disregard for Public Safety
The parties also disagree as to the meanings of "wanton" and "reckless." These terms were best explained by our brothers of the Third Circuit in Lasha v. Olin Corp., 91-459 (La.App. 3d Cir. 3/2/94), 634 So.2d 1354, 1360 (quoting Cates v. Beauregard Elec. Cooperative, Inc., 316 So.2d 907, 916 (La.App. 3d Cir.1975), aff'd, 328 So.2d 367 (La.1976), cert. denied, 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976)) as follows:
"The terms `wilful', `wanton', and `reckless' have been applied to that degree of fault which lies between intent to do wrong, and the mere reasonable risk of harm involved in ordinary negligence. These terms apply to conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended. The usual meaning assigned to do [sic] the terms is that the actor has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow. (citations omitted)."

*336 Vicarious Liability

In the Husseiny, et al. v. United Gas, et al. case, the trial court found Mr. Thomas Murphree, an inspector for On and Offshore Inspection Services, to be an agent of United Gas and imputed his negligence to United. It is United's position that there can be no vicarious liability for punitive damages. In support, United cites only some antiquated Louisiana opinions and a withdrawn federal opinion. Simply stated, these cases do not provide strong enough authority to hold that there can be no vicarious liability for punitive damages.
It seems to us that to hold that the negligence of an agent cannot be imputed to the principal in awarding punitive damages would have the effect of virtually eliminating punitive damage awards. Likewise, in order to avoid punitive damage liability, a corporation would simply have to create a separate entity to perform the hazardous activities, thus insulating itself from punitive liability. To allow punitive liability to be so easily sidestepped runs counter to the legislature's public policy concerns in imposing punitive damages in certain enumerated situations. As such, we find that negligence for punitive damages, like any other type of negligence, may be imputed to a principal through the acts of an agent.

ANALYSIS
In Rivera, et al. v. United Gas, et al., the jury found the defendants negligent, yet chose not to award punitive damages. In the jury interrogatories, the jury indicated that it found plaintiffs' injuries were not caused "by the storage, handling, or transportation of hazardous or toxic substances." This was strictly a factual question to be answered by the jury, and we cannot say the jury was manifestly erroneous in its conclusion.
Here, the defendants were not working on the "live" pipeline, which contained natural gas but, rather, were laying a new, empty line when they accidentally struck the old pipeline, causing the natural gas release. Thus, we cannot say the jury erred in concluding there was no storage, handling, or transportation of the natural gas. While this may not be the conclusion we would have reached had we been sitting as the trier of fact, we cannot say the jury was manifestly erroneous in deciding the way it did.
In Husseiny, et al. v. United Gas, et al., the trial court awarded punitive damages in an amount equal to the compensatory damages awarded each plaintiff. In his Reasons for Judgment, the trial judge makes it clear that he considered all three incidents in finding the conduct of the defendants to be wanton and reckless. The trial judge also makes it clear that he would not have found the defendants' conduct to be wanton and reckless, if he had only considered the one incident currently before the court. Defendants allege the trial court committed reversible error in considering these separate incidents.
During the course of the trial, the defendants filed Motions in Limine to exclude evidence of these prior incidents, and the trial court denied these motions stating that, although the other incidents could not be used to prove that the defendants were negligent with regard to the current incident, the prior incidents could be used to show wanton and reckless disregard for public safety. We agree with the trial court. While La.Code Evid. art. 404(B) states that evidence of other crimes or misconduct is inadmissable to prove the character of a person in order to show that he acted in conformity therewith, such other incidents can be used for other purposes, such as proving wanton or reckless disregard for public safety.
It must be remembered that, when considering an award of punitive damages, the trier of fact is considering the defendant's state of mind in committing the negligent act. Similar prior incidents are part of the defendant's collective knowledge and experience and, thus, lend some insight into the defendant's state of mind.
Here, the defendants continued to act in a negligent manner, despite two similar accidents occurring on the same pipeline within the same community. With this in mind, we cannot say the trial court was *337 manifestly erroneous in finding that the defendants acted with wanton and reckless disregard for public safety.
The remaining assignments of error will now be considered individually.

RIVERA, ET AL. V. UNITED GAS, ET AL., NO. 96-CA-502 Consolidated With NO. 96-CA-503

ISSUE TWOLAW AND ANALYSIS
Plaintiffs allege the jury verdict is internally inconsistent due to the fact that, in Interrogatories No. 1 and 3, the jury found the defendants to be negligent, but, in Interrogatories No. 2 and 4, the jury found that defendants' negligence was not a proximate cause of the incident.
This is a moot point. In response to a motion from the plaintiffs, the trial court issued a Judgment Notwithstanding the Verdict, finding and declaring the defendants' negligence was the proximate cause of the injuries to the plaintiffs. Therefore, the trial court cured any inconsistency which may have been in the jury verdict.

ISSUE THREELAW AND ANALYSIS
Plaintiffs contend the jury's compensatory damage awards were "woefully inadequate." In Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-61 (La.1993), the Louisiana Supreme Court spoke as to the proper role of an appellate court in reviewing an award of general damages, as follows:
[T]he role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact....
The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact.... Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion....
[T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages.... It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
(Citations omitted.)
Being ever mindful of the deference we owe to the trier of fact in its award of damages, we find that the jury's awards, while at the low end of the spectrum, were not so low as to be an abuse of its great discretion.
The cases cited by the plaintiffs with awards of between $20,000.00 and $35,000.00 are not at all analogous to the situation at hand. These cases all deal with exposures and evacuations of a much greater magnitude and over a much longer length of time. Here, the plaintiffs were only inconvenienced for a very short period of time. Accordingly, the jury's damage awards are hereby affirmed.

ISSUE FOURLAW AND ANALYSIS
Additionally, the plaintiffs allege the jury erred in failing to award any damages to 17 of the bellwether plaintiffs. In his Reasons for Judgment, the trial judge stated, "[A]s to seventeen (17) of the bellwether plaintiffs the jury obviously found that the defendants['] negligence in no way was the proximate cause of their alleged injuries and, therefore, the jury determined that they were not entitled to money damages."
There is no question that Louisiana law permits a plaintiff to recover for any physical injury suffered as the result of the negligence of another. In addition, in certain circumstances, a plaintiff may recover for fear and mental anguish sustained while a traumatic ordeal is in progress, regardless of whether the plaintiff sustained physical injury. Harper v. Ill. Cent. Gulf R.R., 808 F.2d 1139 (5th Cir.1987); Carroll v. State Farm Ins. Co., 427 So.2d 24 (La.App. 3d Cir.1983). However "to recover for such mental anguish,... an individual must show that he *338 was involved in a hazardous situationthat is, within the zone of dangerand that his fear was reasonable given the circumstances." Harper, supra, at 1141 (footnote omitted). More than minimal inconvenience and worry must be shown before damages may be awarded. McDonald v. Ill. Cent. Gulf R.R., 546 So.2d 1287 (La.App. 1st Cir. 1989).
Here, much of the physical and mental injury alleged by the plaintiffs could easily be classified as minimal. Most complained only of nausea and headaches, as well as feeling scared and nervous. We cannot say the jury was manifestly erroneous in considering these alleged injuries to be unreasonable under the circumstances. Further, several of the plaintiffs who were not near the scene complained of fear and mental stress due to the fact that they did not know what was happening to their children, who were near the scene of the accident. Importantly, such fear is not recoverable, as Louisiana does not allow recovery for mental anguish occasioned by another's injury or suffering. In Re Air Crash Disaster Near New Orleans, La. On July 9, 1982, 764 F.2d 1084 (1985).[1] Accordingly, we cannot say the jury erred in failing to award damages to 17 of the bellwether plaintiffs.

ISSUE FIVELAW AND ANALYSIS
Plaintiffs' final assignment of error alleges the trial court erred in allowing the defendants to choose 12 of the 24 bellwether plaintiffs, whose damage claims plaintiffs were compelled to present at trial. Plaintiffs allege this somehow prejudiced their case.
La.Code Civ. P. art. 593.1 gives the trial judge wide latitude to "adopt a plan for the management of the class action litigation." Other than this statute, there is very little Louisiana jurisprudence concerning the management of class actions.
At the outset, it should be noted that we can find no instance in the record in which plaintiffs objected to the trial court's proposal that each side pick 12 bellwether plaintiffs and that the claims of all 24 bellwether plaintiffs would then be presented to the jury.
Furthermore, we do not find this management plan to be in any way prejudicial. All of the potential bellwether plaintiffs, that is, all of those persons who filed proofs of claim, were plaintiffs in this matter who held themselves out as having suffered an injury. It is not as if the defendants were allowed to go forth and recruit unsympathetic parties who did not wish to file suit. Therefore, while we respect the right of attorneys to try their cases as they wish, we cannot say the trial court's trial plan, in any way, unfairly prejudiced the case of the plaintiffs.

HUSSEINY, ET AL. V. UNITED GAS, ET AL.

ISSUE SIXLAW AND ANALYSIS
In assessing percentages of fault, the trial court assigned 50 percent of the fault to the excavator operator, Mr. Gremillion, 25 percent of the fault to Mr. Randel D. Rolen, and 25 percent to Mr. Thomas Murphree. Mr. Gremillion and Mr. Rolen were employees of Woodson; thus, Woodson was assessed with 75 percent of the fault. The trial court found Mr. Murphree, an inspector for On and Offshore Inspection Services, to be an agent of United Gas, and assessed 25 percent of the fault to United. Defendant-United contends the trial court erred in imposing vicarious liability on United under agency principles.
A master or employer is liable for the tortious conduct of a servant or employee which is within the scope of authority or employment, but a principal is not liable for the physical torts of a non-servant agent. Liability for the negligent and tortious acts of another does not flow simply because of a principal-agent relationship. Only when the relationship of the parties includes the principal's right to control physical details of the actor as to the manner of his performance, which is characteristic of the relation of master and servant, does the person, in whose service the act is done, become subject to liability for the physical tortious conduct of *339 the actor. Rowell v. Carter Mobile Homes, Inc., 500 So.2d 748 (La.1987).
In his Reasons for Judgment, the trial judge found that United and Woodson shared control of the construction project. He also concluded that United shared in decisions on scheduling and construction operation, as well as use of labor and materials. As such, we cannot say the trial court erred in concluding that On and Offshore Inspection Services was a servant-agent of United, thus causing United to be vicariously liable for the tortious conduct of Mr. Murphree.

ISSUE SEVENLAW AND ANALYSIS
Defendant-Woodson alleges the trial court erred in awarding special damages to Mr. Clarence Triche and Ms. Brenda Millet.
Mr. Triche owns two rental buildings, which are located directly in front of the rupture site. After hearing of the explosion, Mr. Triche immediately rushed to the inspection site. The trial court found that Mr. Triche spent the next three weeks at the site, monitoring construction progress and reassuring his tenants. The trial court awarded Mr. Triche $5,001.00 in damages for lost mechanics' fees, due to the fact that Mr. Triche was away from his mechanics business for the three-week period. Additionally, the court awarded Mr. Triche $3,500.00 for property damage at the site of the explosion.
Ms. Millet is the owner of Change of Scenery, the closest business to the site of the gas rupture. The trial court awarded her $500.00 for damages to her business sign.
Both of these awards are supported by testimony and, as such, will not be disturbed on appeal.
For the foregoing reasons, the judgments of the trial court in both cases are hereby affirmed.
AFFIRMED.
NOTES
[1] We recognize La. Civ.Code art. 2315.6, allowing for recovery of "Lejune" type damages, is an exception to this rule, but it does not apply in this situation.